CHRISTOPHER M. HOGUE, WSBA #48041
Hogue Law Firm
421 W. Riverside Ave., Ste. 660
Spokane WA 99201
Tel: (509) 315-8390
Email: chris@spokaneadvocate.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL GANCARZ, an individual; DANIEL TURETCHI, an individual; COLTON BROWN, an individual; JAMES JOHNSON and AMELIA JOHNSON, individually and husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID ALAN CAPITO II, aka VYACHESLAV ARKANGELSKIY, an individual,<br><br>Defendant. | Case No. 2:23-cv-1113<br><br>**COMPLAINT** |

Plaintiffs Paul Gancarz, Daniel Turetchi, Colton Brown, James Johnson, and Amelia Johnson (together "Plaintiffs"), for their complaint against Defendant David Alan Capito II, aka Vyacheslav Arkangelskiy ("Capito"), allege as follows:

//

COMPLAINT
 - Page 1

# INTRODUCTION

1. Plaintiffs, by this complaint, seek redress for the particular and severe harms Defendant Capito has inflicted on them. At a deeper level, this complaint seeks to vindicate the rule of law and basic principles of free expression for persons who espouse unpopular opinions.

2. Plaintiffs are members of, or have affiliation with, an organization called Patriot Front, whose mission is to "reforge . . . our people, born to this nation of our European race . . . as a new collective capable of asserting our right to cultural independence." In accordance with this mission, members of Patriot Front sometimes engage in provocative activism. While provocative, this activism is nonviolent. Patriot Front in fact prohibits its members from engaging in offensive violence.

3. Patriot Front's mission and activism have aroused the antagonism of many persons and organizations, who have inflicted on Patriot Front members the harsh aspects of doxxing: physical violence, threats, harassment, losses of vocation, and defamation, to name a few. Patriot Front, accordingly, seeks to protect the confidentiality and privacy of its members' identities, as is their First Amendment right.

COMPLAINT
 - Page 2

4. Defendant Capito and those who have aided and abetted him, however, do not believe that persons affiliated with the Patriot Front have rights of confidentiality or indeed any First Amendment rights at all. More specifically, as explained in this complaint, Capito, also known as Vyacheslav Arkangelskiy, infiltrated Patriot Front using a false identity and later gained unauthorized access to confidential information about the Plaintiffs from Patriot Front's computer databases. With the assistance (and possibly prior cooperation) of organizations such as Distributed Denial of Secrets, Inc. ("DDOS"), this confidential information was then widely published and used to harass and threaten the Plaintiffs, with the aim, and result, of doxxing them and other Patriot Front members and causing them serious harm, including loss of their jobs.

5. From Justice Holmes' dissent in *Abrams v. United States*, 250 U.S. 616 (1919) to *Brandenburg v. Ohio*, 395 U.S. 444 (1969), *Snyder v. Phelps*, 562 U.S. 443 (2011), and *Matal v. Tam*, 582 U.S. ___ (2017), and in many other cases, the Supreme Court has stayed true to the principle that dissidents must be given breathing space to express their views, however unpopular or offensive to many. The lawlessness and fraud Defendant Capito has perpetrated is inimical to

COMPLAINT
 - Page 3

this breathing space. Capito, accordingly, must be held accountable for his actions, as this complaint seeks.

**PARTIES**

6. Plaintiff Paul Gancarz is a resident of Virginia. Before Defendant Capito's unlawful and tortious actions as described in this complaint, Mr. Gancarz was a civil engineer, earning approximately $107,000 a year.  He lost that job as result of Capito's actions.

7. Plaintiff Daniel Turetchi at this time is a resident of Pennsylvania. Before Defendant Capito's unlawful and tortious actions, he was working as a real estate agent in Maryland earning in excess of $10,000 a year. As a result of Capito's unlawful actions, Turetchi was discharged from the real estate brokerage where he was employed as a real estate agent and was unable to associate with any other brokerage, thus preventing him from continuing to pursue his real estate career.

8. Plaintiff Colton Brown at this time is a resident of Utah.  Before Defendant Capito's unlawful and tortious actions, he was an electrician's assistant in Washington state earning approximately $50,000 a year. He lost that job as a result of Capito's actions.

COMPLAINT
 - Page 4

9. Plaintiff James Johnson at this time and at the time of Defendant Capito's unlawful and tortious actions is and was a resident of Washington state. Before Capito's unlawful and tortious actions, he was a union HVAC technician in Washington state earning approximately $80,000 a year. He lost approximately one-third of that income, and also benefits, as a result of Capito's actions.

10. Plaintiff Amelia Johnson, the wife of James Johnson, at this time and at the time of Defendant Capito's unlawful and tortious actions is and was a resident of Washington state. Before Capito's unlawful and tortious actions, she had a job earning about $60,000 a year. She lost that job as a result of Capito's actions.

11. Defendant Capito, who changed his name in in March 2022 to Vyacheslav Arkadyevich Arkhangelskiy. is a resident of the state of Washington.

## JURISDICTION AND VENUE

12. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

13. Venue is appropriate in this Court in accordance with 28 U.S.C. § 1391.

COMPLAINT
 - Page 5

14. As Defendant Capito is a resident of Washington, this Court's exercise of personal jurisdiction over him is reasonable and consistent with traditional notions of fair play and substantial justice.

15. In accordance with 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims alleged herein, which form part of the same case or controversy.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

16. Defendant Capito's history reveals a proclivity to violence, acts of harassment, and computer hacking.

17. For example, Capito is a member of and has been the main spokesperson for the Puget Sound John Brown Gun Club, a heavily armed anarchist militia. In or about 2020, using the alias "Nick Vasiliy," Capito gave an interview to NPR News while wearing a necklace fashioned from a bullet once belonging to a domestic terrorist named Willem van Spronsen. Spronsen, a member of the Puget Sound John Brown Gun Club, died in a shootout with police after firebombing a government facility in Tacoma, Washington in 2019.

18. In or about 2021, Capito was profiled by journalist Kim Kelly in an article written for GEN. In the article, Capito described in detail the

COMPLAINT - Page 6

process of 3D printing "ghost guns." Ghost guns are untraceable firearms without serial numbers that can be assembled from a combination of 3D printed and metal parts, which are often sold as "ghost gun kits" online.

19. In 2019, a domestic abuse petition seeking and obtaining a TRO was filed against Capito. The petitioner alleged Capito was stalking her and asserted that "I am concerned for my safety as he has several firearms, is well trained in Krav Maga, has boasted he is immune to pepper spray, is proud he can pick locks, and has explained several ways he has or would like to hack certain computer systems."

20. In late July 2021, Capito joined Patriot Front with the goal of infiltrating the group and causing harm to its members. By using the false name and identity of "Vincent Washington" and lying about his background and values, Capito convinced Patriot Front to accept him for membership.

21. Capito was instructed that, although Patriot Front prohibits offensive violence by its members and seeks to exercise its advocacy within First Amendment boundaries, in light of the possibility of malicious doxxing any information he obtained regarding Patriot Front members or potential members was to be kept confidential. Capito disregarded these instructions.

COMPLAINT
 - Page 7

22. Because of Capito's experience as a professional photographer, Patriot Front assigned him to take photos for some of their local get-togethers in the Pacific Northwest. When nobody was watching, Capito abused his role by taking photographs of members' license plates and other personal information in order to expose their identities later.

23. Using his false identity, Capito also ingratiated himself into the social circles of some Patriot Front members, where he used hidden microphones and cameras to record them.

24. In or about November 2021, Capito got in touch with DDOS, a group of anarchist hackers who were responsible for major security breaches targeting right-wing websites. DDOS assisted him in exploiting Patriot Front's chat platform to obtain access to private chatrooms.

25. Specifically, Capito used his access to the Patriot Front server to execute a session hijack attack, a sophisticated type of cyber-attack which grants the attacker administrator level privileges to information stored on the target server which he would not have otherwise had access to. In an attempt to distract from this attack and ensure its success, Capito also conducted a simultaneous denial of service attack against Patriot Front's website.

26. Using his unauthorized administrator privileges in the chat server, Capito was able to download private chats and intercept video links, which were later published on the DDOS website. He was exposed by Patriot Front's security team in mid-December 2021 and his fraudulently-obtained and unauthorized access was removed.

27. Capito also used the confidential information he had improperly obtained to harass Patriot Front members by trespassing on their property, slashing the tires on their automobiles, circulating flyers and posters in their neighborhoods, and other harassment tactics.

28. As described above, Capito led a coordinated doxxing campaign against the Plaintiffs and other Patriot Front members. This coordinated doxxing campaign had multiple phases or components.

29. First, Capito, using fraudulent, unlawful, and tortious means, obtained sensitive and confidential information regarding the Plaintiffs, including their home addresses, places of employment, and social activities, such as their health club membership information.

30. Second, Capito and his accomplices arranged to widely publish this sensitive and confidential information, with the aim and result of harming the Plaintiffs in their vocations and personal lives.

COMPLAINT
 - Page 9

31. Third, in conjunction with and / or separate from the publication of the confidential and sensitive information, Capito and his accomplices exploited the information to physically harm, harass, and threaten the Plaintiffs at their homes, places of employment, or elsewhere, by trespassing on their property, making harassing telephone calls, slashing automobile tires, placing hostile flyers in Plaintiffs' neighborhoods, and other means.

32. Plaintiff Paul Gancarz was a victim of this coordinated doxxing campaign. In late January 2022, Capito and his accomplices, using sensitive confidential information regarding Gancarz that Capito had unlawfully and tortiously obtained, caused Gancarz's termination from his employment as a civil engineer, where he was earning $107,000 a year. They did so by repeated harassing and threatening telephone calls to Gancarz's employer. As Gancarz had been a competent, reliable, and loyal employee who got along well with the other employees (and never injected political matters into his work), the employer initially resisted this harassment.  Eventually, however, the employer gave in and fired Gancarz.

33. Plaintiff Daniel Turetchi was another victim of the coordinated doxxing campaign.  In late January 2022, Capito and his accomplices, using

COMPLAINT
 - Page 10

sensitive confidential information regarding Turetchi that Capito had unlawfully and tortiously obtained, caused Turetchi's termination from his employment as a real estate agent, where he was earning over $10,000 a year. They did so by repeated harassing and threatening telephone calls to Turetchi's broker.  As Turetchi, like Gancarz, had been a competent, reliable, and loyal agent who got along well with the other employees (and never injected political matters into his work), the broker initially resisted this harassment.  Eventually, however, after Capito and his accomplices also began harassing phone calls to the Great Baltimore Board of Realtors, the broker gave in and fired Turetchi.

34.     Plaintiff Colton Brown was another victim of the coordinated doxxing campaign. Brown was the Patriot Front representative whom Capito defrauded into allowing Capito into Patriot Front membership.  Before Capito's unlawful actions, Brown was living at his parents' home and working as an electrician's assistant earning approximately $50,000 a year.  As a result of Capito's unlawful actions, which included not only malicious doxxing but trespassing onto the Browns' property, taking photographs of the property, and posting the photographs as part of the doxxing, Brown lost his job and became estranged from his father, who required him to leave the Brown residence. Brown thus found himself without a home and without a job. Brown, consequently, left Washington for possible

COMPLAINT
 - Page 11

employment in another state, where, however, he also encountered difficulties finding employment as a result of Capito's coordinated doxxing campaign.

35. Plaintiff James Johnson was another victim of the coordinated doxxing campaign. Johnson and his wife Amelia were doxxed by Capito and his accomplices in December 2021.  Before the doxx, James Johnson had been working as a union HVAC technician earning approximately $80,000 a year.  Following the December 2021 doxx and as a result of it,  hundreds of hostile flyers were posted around the Johnson's house.  The doxxing and flyers created a hostile environment for the Johnsons in their neighborhood and, given Capito's known proclivity for harassment and violence, the Johnsons moved out of the neighborhood. Their move required James Johnson to relocate his workplace and disrupted his relationship with his union, resulting in a one-third loss in his yearly income and a loss of benefits.

36. Plaintiff Amelia Johnson was another victim of the coordinated doxxing campaign. As described in the prior paragraph, the actions of Capito and his accomplices created a hostile environment for the Johnsons in their neighborhood, forcing them to move.  These actions also resulted in Amelia

COMPLAINT
 - Page 12

Johnson bring fired from her job in which she was earning $60,000 a year and her inability to find new employment.

## CAUSES OF ACTION

### I. Federal Computer Fraud and Abuse Act, 18 U.S.C. 1030 ("CFAA") – All Plaintiffs

37. Plaintiffs reallege and incorporate the allegations set forth in Paragraphs 1 through 36.

38. The computer that Defendant Capito accessed as described in prior paragraphs was a "protected computer" as defined under the CFAA.

39. Capito intentionally accessed this computer.

40. Capito's access was unauthorized and / or exceeded authorization as defined in the CFAA, in that Capito used a false and fraudulent identity to gain access to the Patriot Front and its computer and computer databases and in violation of Patriot Front policies and instructions used his access to collect and transmit confidential information to persons and organizations hostile to Patriot Front and its members.

41. Plaintiffs each suffered economic losses in excess of $5,000 as a result of Capito's unauthorized access or access in excess of authorization to the Patriot Front computer and databases. Plaintiffs also suffered other economic losses as well as mental distress.

COMPLAINT
- Page 13

**II.     Invasion of Privacy – Intrusion on Private Affairs – All Plaintiffs**

42.  Plaintiffs reallege and incorporate the allegations set forth in Paragraphs 1 through 36.

43.  Plaintiffs had a reasonable expectation of privacy with respect to their Patriot Front membership and related information, especially vis-a-vis Defendant Capito, who has a history of violence and harassment and was highly hostile toward Patriot Front and its members.

44.  Caputo intruded upon this aspect of Plaintiffs' private affairs.

45.  This intrusion would be highly offensive to any reasonable person who held unusual or unpopular opinions that were often misinterpreted or distorted by the general public and mainstream media and subjected the person to potential threats, harassment, and loss of vocation.

46.  Plaintiffs each suffered economic losses as described in paragraphs 32-36 as a result of Capito's invasion of their privacy, and suffered other economic losses, as well as mental distress.

**III.    Invasion of Privacy – Giving Publicity to Private Facts – All Plaintiffs**

47.  Plaintiffs reallege and incorporate the allegations set forth in Paragraphs 1 through 36.

COMPLAINT
- Page 14

48. Plaintiffs had a reasonable expectation of privacy with respect to their Patriot Front membership and related information, especially vis-a-vis Defendant Capito, who has a history of violence and harassment and was highly hostile toward Patriot Front and its members.

49. Capito violated this privacy by giving publicity to Plaintiffs' Patriot Front membership and related information, especially given that Capito arranged for this information to be widely disseminated through the cooperation and assistance of DDOS and Unicorn Riot.

50. Capito's violation of Plaintiffs' privacy as described above would be highly offensive to any reasonable person who held unusual or unpopular opinions that were often misinterpreted or distorted by the general public and mainstream media and subjected the person to potential threats, harassment, and loss of vocation.

51. There is no legitimate public interest that could excuse or justify Capito's use of unlawful and criminal actions, such as violation of the Computer Fraud and Abuse Act, to infiltrate and expose the persons such as Plaintiffs to persecution, including threats, harassment, and loss of vocation, based on those persons' unpopular ideology.

COMPLAINT
- Page 15

52. Plaintiffs each suffered economic losses as described in paragraphs 32-36 as a result of Capito's invasion of their privacy, and suffered other economic losses, as well as mental distress.

### IV. Virginia Computer Trespass Act, Civil Action, § 18.2-152.12 Virginia Code – Paul Garcanz

53. Plaintiff Garcanz realleges and incorporates the allegations set forth in Paragraphs 1 through 36.

54. The computer that Defendant Capito accessed as described in prior paragraphs was a computer as defined in § 18.2-152.2 of the Virginia Computer Trespass Act.

55. Capito with malicious intent and by deceptive means accessed this computer and the database thereon and performed "computer operations" as defined in § 18.2-152.2 of the Virginia Computer Trespass Act.

56. Capito's access to the computer and databases and use of computer operations was "without authority," as that term is defined in § 18.2-152.2 of the Virginia Computer Trespass Act.

57. As described in paragraph 32, Gancarz suffered economic losses in excess of $25,000 as a result of Capito's unauthorized access and computer operations, in that he lost his civil engineering job, for which he

COMPLAINT
 - Page 16

had been earning $107,000 a year, and suffered other economic losses, as well as mental distress.

### V. Maryland Unauthorized Access to Computers Act, Civil Action, § 7-302 of Maryland Code – Daniel Turetchi

58. Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1 through 36.

59. The computer that Defendant Capito accessed as described in prior paragraphs was a "computer" as defined in § 7-302 of the Maryland Unauthorized Access to Computer Act.

60. Capito gained access to this computer and its computer database in accordance with the definitions of "access" and "computer database" in § 7-302 of the Maryland Unauthorized Access to Computer Act.

61. Capito's access was unauthorized, in that Capito used a false and fraudulent identity to gain access to the Patriot Front and its computer and computer databases and in violation of Patriot Front policies and instructions used his access to collect and transmit confidential information to persons and organizations hostile to Patriot Front and its members.

62. As described in paragraph 33, Turetchi suffered losses as a result of Capito's unauthorized access and computer operations, in that he lost his job as a

COMPLAINT
 - Page 17

real estate agent, for which he had been earning $25,000 a year, and suffered other economic losses, as well as mental distress.

### VI. Fraud – Misrepresentation - Colton Brown

63. Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1 through 36.

64. Capito represented to Brown, among other representations, that Capito's name was Vincent Washington, that he was sympathetic to Patriot Front's mission and values, and that he would keep confidential all information he learned as a Patriot Front member or potential member.

65. These representations were false.

66. Capito made these representations knowing they were false.

67. Capito intended that Brown and others affiliated with Patriot Front rely on these false representations.

68. Brown did in fact rely on the representations.

69. Brown's reliance was reasonable. Capito had carefully created his false identity and concealed his actual identity.

70. Brown was injured by the misrepresentations, in that he was thereby deceived into allowing Capito into the Patriot Front as a member,

COMPLAINT
 - Page 18

from which position Capito was able to uncover sensitive confidential information that he used to doxx Brown and others.

71. Moreover, Capito used the confidential material he obtained by these fraudulent means to harass Brown at his home and workplace.

72. As a result of Capito's misrepresentations, Brown was forced to relocate and thus lost substantial income.

73. Capito's fraud was malicious.

## RELIEF REQUESTED

Plaintiffs pray for judgment to be entered against Defendant Capito as follows:

1. Economic and non-economic damages in an amount to be determined at trial;

2. Preliminary and injunctive relief to prevent Defendant Capito's further use of confidential information as described in this complaint;

3. Punitive or exemplary damages as allowed by law;

4. Costs and reasonable attorneys' fees as allowed by law; and

5. Such other relief as this Court deems just and equitable.

COMPLAINT
- Page 19

DATED this 25th day of July 2023.

HOGUE LAW FIRM

/s/ *Christopher M. Hogue*
Christopher M. Hogue
WSBA #48041

GLEN ALLEN LAW

/s/ *Glen Allen*
Glen Allen
(*pro hac vice to be filed*)

5423 Springlake Way
Baltimore, MD 21212
Tel: (410) 802-6453
Email: glenallenlaw@protonmail.com
*Attorney for Plaintiffs*

COMPLAINT
- Page 20