1

HONORABLE RICHARD A. JONES

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

6   PAUL GANCARZ, an individual;        )   CASE NO. 3:23-cv-01113-RAJ
    DANIEL TURETCHI, an individual;     )
7   COLTON BROWN, an individual;        )   DEFENDANT'S MOTION TO DISMISS
    JAMES JOHNSON and AMELIA            )   FOR FAILURE TO STATE A CLAIM
8   JOHNSON, individually and husband   )
    and wife,                          )   NOTE ON MOTION CALENDAR:
9                                       )   July 25, 2025
              Plaintiffs,               )
10                                      )   ORAL ARGUMENT REQUESTED
          v.                            )
11                                      )
    DAVID ALAN CAPITO II, aka           )
12  VYACHESLAV ARKANGELSKIY,            )
    aka RYAN SMITH, an individual,      )
13                                      )
              Defendant.                )
14  _____ )

15        COMES NOW Defendant to submit this motion to dismiss Plaintiffs' complaint for

16  failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the

17  Federal Rules of Civil Procedure.

18  **I.     INTRODUCTION**

19        This case involves a dispute between alleged individual members of a white supremacist

20  organization called Patriot Front, over the alleged infiltration by the Defendant into that group

21  and leaking of member information to a publication. *See* Dkt 1, Complaint at 2-3; Center for

22  Extremism, *Patriot Front*, ADL (July 1, 2024)

23

24  DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 1

1    https://www.adl.org/resources/backgrounder/patriot-front.[1] The complaint asserts six

2    insufficiently pled claims against Mr. Capito. Three of the claims have to do with computer

3    trespass laws; two are based in the common law tort of invasion of privacy; and the final claim

4    is for fraudulent misrepresentation.

5        The computer trespass counts fail to allege an essential, threshold element that allows

6    for a civil cause of action: cognizable loss or damages.

7        The invasion of privacy claims fail for two reasons: the information alleged to have been

8    exposed is a matter of substantial public interest, and the alleged invasion should not be highly

9    offensive to any reasonable person in the plaintiff's shoes.

10       The fraudulent misrepresentation count fails to meet the bar of specificity required by

11   the Federal Rules of Civil Procedure.

12       If this Court dismisses the federal claim, for which it has arguable original jurisdiction,

13   the Court should deny supplemental jurisdiction over the state law claims.

14   **II.    LEGAL STANDARD**

15       To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must

16   contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

17   face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The

18   plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

19   possibility that a defendant's has acted unlawfully . . . . Where a complaint pleads facts that are

20   'merely consistent with' a defendant's liability, it stops short of the line between plausibility of

21   'entitlement to relief.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 544 U.S. 556-7 (2007)). Absent

22

---

23   [1] All websites cited in this brief were last visited June 27, 2025.
     DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 2

24                                                            CIVIL LIBERTIES DEFENSE CENTER
                                                             1711 Willamette St Ste 301 # 359
                                                             Eugene, OR 97401  (541) 687-9180

1    facial plausibility, a plaintiff's claims must be dismissed. *Id.*

2    Dismissal is appropriate where the complaint "fails to state a cognizable legal theory . . .

3    to support a claim." *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th

4    Cir. 2010). "Determining whether a complaint states a plausible claim for relief will . . . be a

5    context-specific task that requires the reviewing court to draw on its judicial experience and

6    common sense." *Id*. at 679 (citations omitted). *See also Iqbal*, 556 U.S. at 679. The court should

7    not accept as true allegations that state only legal conclusions. *Id*. at 678-79 (court is not

8    required to accept as true a "legal conclusion couched as a factual allegation").

9    Although Mr. Capito intends to vigorously dispute Plaintiff's inaccurate and outlandish

10    factual assertions if the complaint is not dismissed, for purposes of this motion Mr. Capito will

11    not undertake to refute the allegations against him. Even if the well-pleaded allegations are

12    assumed, *arguendo*, to be true, they nevertheless fail to support any of the causes of action

13    asserted in the complaint. Therefore, the complaint should be dismissed.

14    **III.    ARGUMENTS**

15    **A.    Plaintiffs' CFAA Claims are Facially Deficient as They Fail to Allege a
         Cognizable "Loss" Under the Statute**

16

17    The CFAA creates criminal and civil liability for "acts of computer trespass by those

      who are not authorized users or who exceed authorized use." *Facebook, Inc. v. Power Ventures,*

18
      *Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016). The CFAA authorizes a person damaged by

19
      prohibited conduct to bring a civil suit only where the conduct involves one of an enumerated

20
      set of factors. 18 U.S.C. § 1030(g) (citing 18 U.S.C. § 1030(c)(4)(A)(i)).

21
      To survive dismissal, a CFAA claim must plausibly allege: (1) unauthorized access (or

22
      exceeding authorized access), and  (2) resulting "loss" or "damage" as defined by § 1030(e).

23
      DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 3

24                                                      CIVIL LIBERTIES DEFENSE CENTER
                                                            1711 Willamette St Ste 301 # 359
                                                            Eugene, OR 97401  (541) 687-9180

1 | Further, the "loss" must be to "1 or more persons during any 1-year period . . . aggregating at

2 | least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). "Authorization" is not defined in the

3 | statute, but the plain meaning, as defined by *Merriam-Webster* online, is "the act of

4 | authorizing," which is "to endorse, empower, justify, or permit by or as if by some recognized

5 | or proper authority (such as custom, evidence, personal right, or regulating power)."

6 | https://www.merriam-webster.com/dictionary/authorization; https://www.merriam-

7 | webster.com/dictionary/authorizating.

8 |      Critically, the damages/loss claimed by the plaintiff are not cognizable under the statute.

9 | In the Complaint, Plaintiffs allege that Defendant's actions lead to damages in the form of

10 | mental distress and loss of income/job opportunities. This does not fall within the statutory

11 | definition of the term "loss" under the CFAA: "any reasonable cost to any victim, including the

12 | cost of responding to an offense, conducting a damage assessment, and restoring the data,

13 | program, system, or information to its condition prior to the offense, and any revenue lost, cost

14 | incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.

15 | § 1030(e)(11). The Ninth Circuit has held that this is a "narrow conception of loss" for CFAA

16 | violations. *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262-63 (9th Cir. 2019). The

17 | *Andrews* court noted that the CFAA's definition of damages, "with its references to damage

18 | assessments, data restoration, and interruption of service -- clearly limits its focus to harms

19 | caused by computer intrusions, not general injuries unrelated to the hacking itself." The court

20 | further held that "any theory of loss must conform to the limited parameters of the CFAA's

21 | definition." *Id.* at 1263.

22 |

23 |

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 4

24 |

1    In *Creative Computing v. Getloaded.com LLC*, the Ninth Circuit held that the CFAA

2  limits damages to economic damages, precluding "damages for death, personal injury, mental

3  distress, and the like." 386 F.3d 930, 935 (9th Cir. 2004).

4    Accordingly, in *U.S. v. Middleton*, the Ninth Circuit found that the district court's jury

5  instructions on "damage" and "loss" under the CFAA were fair and accurate. 231 F.3d 1207,

6  1213 (9th Cir. 2000). Those instructions "explained to the jury that 'damage' is an impairment

7  to [the plaintiff's] computer system that caused a loss of at least $5,000," and "In determining

8  the amount of losses, you may consider what measures were reasonably necessary to restore the

9  data, program, system, or information that you find was damaged or what measures were

10  reasonably necessary to resecure the data, program, system, or information from further

11  damage." *Id*. That measure of damages bears no resemblance to the allegations in the instant

12  complaint. Similarly, in *United States v. Sablan*, 92 F.3d 865, 869 (9th Cir. 1996), the court

13  upheld a decision wherein, "[i[n calculating the loss, the district court included the cost of

14  repairs and other activities necessary to restore the bank's files to their original condition."

15    In short, at least within the Ninth Circuit, "loss" under the CFAA extends only to costs

16  incurred assessing the damage to a computer's data breach, restoration and re-securitization of

17  the data, and other measures focused on the integrity of the computer itself. What the alleged

18  wrongdoer does with the data after a breach is not considered when calculating loss under the

19  CFAA. Nor do litigation expenses constitute "losses" that are cognizable under the statute. *See,*

20  *e.g., Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1071-72 (D. Ariz. 2015).

21    This court previously considered a damages claim similar to the one at issue here, in

22  *United Federation of Churches, LLC v. Johnson*, 598 F. Supp. 3d 1084 (W.D. Wash. 2022). In

23  that case the Satanic Temple (TST) sued a former member, Mr. Johnson, for violation of the

24

1  CFAA when he used his administrative privileges to hijack the TST social media accounts by

2  deleting access to the other administrators. *Id.* In *Johnson,* this court granted defendant's motion

3  to dismiss the CFAA claims, agreeing with the defendant's argument that the alleged loss of

4  members represents a "lost business opportunity" and/or "damaged reputation" that is not

5  actionable under the CFAA. *Id.* at 1097-98.

6      In the case at issue, the losses alleged in the complaint are not in any way related to

7  Patriot Front's database, program, revenue, incurred costs, or even anything related to the

8  organization itself. The losses and damages Plaintiffs alleged are solely related to the Plaintiffs'

9  *individual* reputations, employment, and alleged emotional harms, and not by an interruption of

10  computer service or any damages to Patriot Front's database or computers. *See* Complaint ¶¶

11  31-36 and ¶ 41.

12      Plaintiffs' cause of action under the CFAA is facially deficient and must be dismissed

13  for failure to state a claim for relief.

14      **B.    Plaintiffs' Claim Under Virgina's Computer Trespass Fails, as It Fails to
            Show an Injury Cognizable Under the Statute**

15  
Similarly to Plaintiffs' CFAA claims, Plaintiffs' attempt to invoke Virginia's computer

16  trespass statute (Va. Code Ann. § 18.2-152.4) fails as a matter of law, because the statute does

17  not cover the conduct alleged. The Complaint asserts that defendant accessed Patriot Front's

18  databases and obtained certain information on its members' identity. However, the statute

19  narrowly prohibits only specific acts: (1) disabling, deleting, or removing data; (2) causing

20  malfunctions; (3) altering or erasing data; (4) altering financial instruments or funds transfers;

21  (5) causing physical property damage via computer; (6) making unauthorized copies of data or

22  

23  

24  DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 6

1  software; (8) installing keyloggers or spyware; or (9) installing software that seizes control or

2  disrupts system functions. *Va.* Code Ann. § 18.2-152(A)(1)-(9).

3      The statute clearly does not prohibit mere access to, or copying or sharing of,

4  information, absent alteration, destruction, or impairment of data or systems. *Tryco, Inc. v.*

5  *United States Med. Source*, 80 Va. Cir. 619, 629 (Cir. Ct. 2010). In *Tryco*, the court rejected a

6  Virginia statutory computer trespass claim where the plaintiff failed to show any resulting

7  statutory injury from the copying of files. *Id*. Specifically, no facts were pled stating that the

8  files were deleted from the accessed database or to support any other type of covered loss or

9  injuries;. *Id.*

10      In contrast, in *Hately v. Watts*, the Fourth Circuit cited calls to technical support, time

11  spent assessing unauthorized access to plaintiff's account, the downloading of anti-virus

12  software, and restoration of old e-mails as grounds for finding that the plaintiff had successfully

13  alleged a cognizable injury. 917 F.3d 770, 775 (4th Cir. 2019). The Fourth Circuit has similarly

14  held that payment of specialists to fix a data breach is a legitimate injury for which civil

15  damages can be awarded. *A.V. ex rel. Vanderhyne v. iParadigms, LLC*, 562 F.3d 630, 647 (4th

16  Cir. 2009).

17      Just as with the CFAA, the concept of "injury" under the Virginia Computer Trespass

18  Act goes no further than damage to the computer or data itself; what happens with harvested

19  data after a breach is not considered.

20      Here, Plaintiffs allege only that Capito obtained and later disclosed information. They do

21  not allege that Capito deleted, altered, disabled, or impaired any data or computer systems. *See*

22  Complaint ¶¶ 53-57. Plaintiffs' alternative theory, that liability attaches merely because

23

24
DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 7

CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St Ste 301 # 359
Eugene, OR 97401  (541) 687-9180

1  computer operations were involved, finds no support in the statutory text or controlling Virginia

2  law. *Id.; see* Va. Code Ann. § 18.2-152.4(A).

3      As such, Plaintiffs' claim under Va. Code Ann. § 18.2-152.4 fails to state a claim for

4  relief and must be dismissed.

5      **C.    Plaintiffs' Claim under Maryland's Computer Offenses Statute Fails, as It
        Does Not Allege a Specific and Direct Injury**

6

7      Plaintiffs also allege that Defendant violated Maryland's computer offenses statute by

8  accessing Patriot Front's database. *See* Complaint ¶¶ 58-62, citing Md. Code Ann., Crim. Law §

9  7-302(g)(1). However, as with the CFAA and Virginia claims, Plaintiffs' civil claim under the

10 Maryland statute fails, because Plaintiffs do not allege a "specific and direct injury" resulting

11 from the alleged access, as required for civil liability.

12     Under § 7-302(g)(1), a civil plaintiff must plead a specific and direct injury that flows

13 from the statutory violation. Of the three statutes in the complaint, the Maryland Unauthorized

14 Access to Computers Act is the clearest in explaining what kinds of losses it addresses in the

15 statutory text itself. Maryland Code § 7-302. In its definitions, the statute provides:

16     (3)(i) "Aggregate amount" means a direct loss of property or services incurred by
       a victim.

17       (ii) "Aggregate amount" includes:

18          1. the value of any money, property, or service lost, stolen, or rendered
             unrecoverable by the crime; or

19

20          2. any actual reasonable expenditure incurred by the victim to verify
             whether a computer program, computer, computer system, or computer
             network was altered, acquired, damaged, deleted, disrupted, or destroyed

21           by access in violation of this section.

22 *Id*.

23

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 8
24                                           CIVIL LIBERTIES DEFENSE CENTER
                                             1711 Willamette St Ste 301 # 359
                                             Eugene, OR 97401  (541) 687-9180

1    Here, Plaintiffs allege that their harm consists of lost employment opportunities,

2    reputational harm, and emotional distress. *See* Complaint ¶¶ 33 and 62. However, these

3    injuries are not direct results of any alleged database access and by no stretch of

4    interpretation fall under the Maryland statutory definition cited above. Rather, plaintiffs'

5    employers made independent decisions to terminate Plaintiffs. Patriot Front is a self-

6    identified white nationalist and fascist organization whose activities and membership are

7    public by plaintiffs' own participation. These were discretionary employment decisions

8    made by third parties, not the natural or automatic consequence of any alleged computer

9    access.

10    As such, plaintiffs fail to satisfy the direct injury element necessary to state a

11    civil claim under the Maryland statute. This same causal deficiency undermines much of

12    Plaintiffs' complaint generally: their losses are not directly attributable to Defendant's

13    alleged access, but to their own voluntary membership in Patriot Front and the resulting

14    public and employer reactions that followed. Consequently, Plaintiffs' claim under the

15    Maryland statute fails to state a claim for relief and must be dismissed.

16    **D.      Plaintiffs Fail to State a Claim for the Torts of "Intrusion upon Private
             Affairs" and "Giving Publicity to Private Facts," Because the Membership**

17    **of Patriot Front is Information of Legitimate Public Interest, and
             Publication of that Information Should Be Within Any Patriot Front**

18    **Member's Reasonable Expectation**

19    To prevail on the common law tort of Intrusion on Private Affairs (also known as

20    Intrusion upon Seclusion), a plaintiff must prove that the defendant "(1) deliberately intruded;

21    (2) into the plaintiff's solitude, seclusion, or private affairs; (3) in a manner that would be highly

22    offensive to a reasonable person." *Fisher v. State ex rel. Dep't of Health*, 125 Wash. App. 869,

23    879 (2005). *See also Restatement (Second) of Torts* § 652B (1977) (same).

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 9

24                                                        CIVIL LIBERTIES DEFENSE CENTER
                                                          1711 Willamette St Ste 301 # 359
                                                          Eugene, OR 97401  (541) 687-9180

1    The common law tort of Giving Publicity to Private Facts is similar. It includes three

2   elements: "a plaintiff must prove that the defendant (1) intentionally disclosed private facts; (2)

3   that were not of legitimate concern to the public; (3) which disclosure would be highly offensive

4   to a reasonable person." *Adams v. King Cnty.*, 164 Wash. 2d 640, 661, (2008). *See also*

5   *Restatement (Second) of Torts* § 652D (1977).

6    The right to privacy is not absolute and must be balanced against the legitimate public

7   interest in the information at issue. *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104,

8   1110 (W.D. Wash. 2010). The Ninth Circuit has recognized that the public's interest in certain

9   information "may mitigate the offensiveness of the intrusion" in an "intrusion on private affairs"

10   case. *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 819 (9th Cir.

11   2002). For example, in *Carafano v. Metrosplash.com, Inc.*, the Ninth Circuit affirmed on other

12   grounds a district court's rejection of an invasion of privacy claim, because the personal address

13   in question was "newsworthy." 339 F.3d 1119, 1122 (9th Cir. 2003).

14    Patriot Front was formed by participants in the deadly white supremacist 2017 "Unite

15   the Right" rally in Charlottesville, Virginia, in which a member of Patriot Front's predecessor

16   organization drove his car into an anti-racist march, killing one and injuring over a dozen. *See*

17   ADL.org, *Hate on Display/Patriot Front,* https://www.adl.org/resources/hate-symbol/patriot-

18   front.[2] Patriot Front's bigoted demonstrations have gathered media attention from the New York

19

20   [2] FRE 201 allows judicial notice of any fact "not subject to reasonable dispute in that it is either
(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate
and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

21   Fed. R. Evid. 201(b). *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (court
may take judicial notice of undisputed matters of public record); *Ariz. Libertarian Party v.*

22   *Reagan*, 798 F.3d 723, 727 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 823 (2016) (same). *See, e.g.,*
*Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003) (taking judicial notice of facts about

23   diabetes); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.6 (9th

24                                                        CIVIL LIBERTIES DEFENSE CENTER
                                                                1711 Willamette St Ste 301 # 359
                                                                Eugene, OR 97401  (541) 687-9180

1  Times, NPR, and other major news outlets. *See* Alan Feuer, *After Jan. 6 Sedition Convictions,*

2  *Far-Right Threats Remain,* NY Times (May 7, 2023),

3  https://www.nytimes.com/2023/05/05/us/politics/jan-6-sedition-proud-boys-far-right.html; *see*

4  *also* All Things Considered, *A Look at the Role Armed Militia Groups May Have Played in the*

5  *Weeks Before Jan. 6*, NPR (June 12, 2022, at 17:10 EST),

6  https://www.npr.org/2022/06/12/1104460671/a-look-at-the-role-armed-militia-groups-may-

7  have-played-in-the-weeks-before-jan-.

8      The names and vocations of Patriot Front participants have been at the center of much of

9  this coverage. *See* Mackenzie Ryan, *A White Nationalist Pyramid Scheme: How Patriot Front*

10 *Recruits Young Members,* The Guardian (Sep. 2, 2022, at 06:00 EDT),

11 https://www.theguardian.com/us-news/2022/sep/02/patriot-front-recruits-members-young-

12 pyramid-scheme; Rina Torchinsky, *1 in 5 Patriot Front Applicants Say They Have Ties to the*

13 *Military*, NPR (Feb. 9, 2022, at 18:46 EST), https://www.npr.org/2022/02/09/1079700404/1-in-

14 5-patriot-front-applicants-say-they-have-ties-to-the-military.

15     The membership of Patriot Front is newsworthy information of legitimate public

16 interest, as evidenced by the frequent coverage of their membership and operations by major

17 news outlets. For this reason, the claims of "invasion of privacy" by either "intrusion on private

18 affairs" or "giving publicity to private facts" fail to state a claim and should be dismissed.

19

20 Cir. 2014) (taking judicial notice of the recession in the U.S. economy from December 2007 to
June 2009); *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 399, 57 S. Ct. 578 (1937) ("We may
21 take judicial notice of the unparalleled demands for relief which arose during the recent period
of depression and still continue to an alarming extent despite the degree of economic recovery
22 which has been achieved"); *United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 n.5 (9th Cir.
2010) (taking judicial notice of the fact that nearly 281,000 aliens were removed from the
23 United States pursuant to final orders of removal in 2006).

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 11
24                                        CIVIL LIBERTIES DEFENSE CENTER
                                          1711 Willamette St Ste 301 # 359
                                          Eugene, OR 97401  (541) 687-9180

1    In addition, not all statements which disclose private facts about a plaintiff are

2 actionable. Both "intrusion on public affairs" and "giving publicity to private facts" require that

3 the disclosure was "highly offensive to a reasonable person." *Restatement (Second) of Torts* §

4 652B (1977). In determining the offensiveness of an invasion of privacy, the Ninth Circuit

5 considers "the degree of the intrusion, the context, conduct and circumstances surrounding the

6 intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and

7 the expectations of those whose privacy is invaded." *Deteresa v. Am. Broad. Cos.*, 121 F.3d

8 460, 465 (9th Cir. 1997).

9    The expectations of Patriot Front members regarding the public interest in their

10 membership does not tend toward one of privacy. Since at least 2017, publication of

11 membership in white supremacist extremist organizations has been so commonplace that there

12 have been news articles, public debate, and even academic research into the subject. *See* Decca

13 Muldowney, *Info Wars: Inside the Left's Online Efforts to Out White Supremacists,* Pro Publica,

14 (Oct. 30, 2017, at 08:00 EDT), https://www.propublica.org/article/inside-the-lefts-online-

15 efforts-to-out-white-supremacists; WNYC Studios, *Is it Right to Dox a Nazi* (Dec. 21, 2017),

16 https://www.wnycstudios.org/podcasts/otm/segments/it-right-dox-nazi; Farah Mohammed, *Is*

17 *Doxxing the Right Way to Fight the "Alt-Right?"*, JSTOR (Aug. 30, 2017),

18 https://daily.jstor.org/is-doxxing-the-right-way-to-fight-the-alt-right/.

19    For years, Patriot Front has been aware of these efforts to disclose their members'

20 identities. *See* Chris Schiano, *et. al.*, *Patriot Front Fascist Leak Exposes Nationwide Racist*

21 *Campaigns,* Unicorn Riot (Jan. 21, 2022), https://unicornriot.ninja/2022/patriot-front-fascist-

22 leak-exposes-nationwide-racist-campaigns/.

23

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 12

24

1    Patriot Front as a group has been on the offensive side of "doxing" as well, for example,

2    when in June 2022 far-right hackers attempted to expose information about the police officers

3    who arrested 31 Patriot Front members harassing a gay pride march in Idaho. *See* Mack

4    Lamoureux, *Neo-Nazis Are Trying to Dox the Cops Who Arrested Patriot Front Members*, Vice

5    News, (June 13, 2022, at 15:52 EST), https://www.vice.com/en/article/4axgzj/neo-nazis-are-

6    trying-to-dox-the-cops-who-arrested-patriot-front-members.

7    Due to its familiarity with doxing, both as a target and as a catalyst thereof, any member

8    in Patriot Front should have a reasonable expectation that the organization's membership is

9    under scrutiny. Given that such disclosure is also a matter of public interest, Plaintiffs'

10   complaint fails to state a claim under either common-law theory, and should be dismissed.

11   **E.      The Fraudulent Misrepresentation Allegations Do Not Rise to the Level of**
        **Particularity Required by Federal Rules of Civil Procedure 9(b)**

12

13   For claims of fraud, FRCP Rule 9(b) sets a heightened pleading requirement, such that a

     claim for fraudulent misrepresentation must state the content of the allegedly false statements

14

     and "the time, place, and specific content of the false representations as well as the identities of

15

     the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,

16

     806 F.2d 1393, 1401 (9th Cir. 1986). "To satisfy Rule 9(b), a pleading must identify the who,

17

     what, when, where, and how of the misconduct charged, as well as what is false or misleading

18

     about [the purportedly fraudulent] statement, and why it is false." *Cafasso v. Gen. Dynamics C4*

19

     *Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

20

     The complaint specifies no "who" regarding the allegedly false statements made in

21

     Paragraph 20, beyond the allegation that the statements were made to the general organization

22

     "Patriot Front."

23

     DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 13

24                                                              CIVIL LIBERTIES DEFENSE CENTER
                                                                1711 Willamette St Ste 301 # 359
                                                                Eugene, OR 97401  (541) 687-9180

1    Neither does the pleading specify the "when" of the allegedly false statements made to

2    Colton Brown under Count VI. Complaint at ¶ 64. The complaint also does not indicate whether

3    the statements in Paragraphs 20 and 64 are the same, or whether plaintiffs allege defendant

4    Capito lied to people other than Brown in July of 2021. *See* Complaint ¶¶ 20 and 64. Even if the

5    court is inclined to infer that the statements in Paragraphs 20 and 64 are the same, the pleading

6    does not get any more specific in terms of the "when" than the month in which they allegedly

7    happened.

8        The "what" of the fraud is also left vague, stating that Capito lied "about his background

9    and values," but neither specifying the substance of the alleged lies or any facts that could make

10   their falsity plausible. Complaint ¶ 20.

11       The statements alleged to have been made to Colton Brown include no specific "when"

12   or context explaining whether they were made online, over the phone, in person, or any details

13   of "how" the allegedly false information was conveyed. *See generally* Complaint.

14       Accordingly, the fraud claim lacks the particularity required for a pleading of fraud

15   under Federal Rules of Civil Procedure Rule 9(b), and should be dismissed for failure to state a

16   claim.

17   **F.     The Court Should Deny Supplemental Jurisdiction over the State Law
         Claims if It Dismisses Plaintiffs' Federal Claim**

18

19       Federal courts have limited jurisdiction, but may, in specific instances, maintain

20   supplemental jurisdiction over claims and counterclaims which have no other basis for

21   jurisdiction in federal court. 28 U.S.C. § 1367. A court has jurisdiction over state law claims

22   "that are so related to claims" brought under the Court's federal question jurisdiction "that they

23   form part of the same case or controversy under Article III." *Id.* The assessment of whether such

24

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 14

1  a claim forms part of the same "case or controversy," requires the Court to determine whether

2  the federal claim and the state law claim arise from the same "common nucleus of operative

3  fact." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) (citing *United Mine*

4  *Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)); *Bahrampour v.*

5  *Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

6       In the matter at hand, plaintiffs' allegations appear to arise from the same facts presented

7  in the state and federal claims. However, if the federal CFAA claim is dismissed, that triggers a

8  discretionary exemption from supplementary jurisdiction. Under 28 U.S.C. 1367(c)(3), the

9  district court may decline to exercise supplemental jurisdiction over a claim if the court has

10  dismissed all claims over which it has original jurisdiction. 28 U.S.C. 1367(c)(3); *see Lacey v.*

11  *Maricopa County,* 693 F.3d 896, 940 (9th Cir. 2012). If supplemental jurisdiction is not

12  exercised by the district court, then all of the state law claims must be dismissed without

13  prejudice. *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996); *Sikhs for Just.*

14  *"SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096-97 (N.D. Cal. 2015), *aff'd sub nom.*

15  *Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017).

16       If this Court finds that Plaintiffs' CFAA claim fails, both statute and caselaw support the

17  dismissal of the state law claims.

18  **CONCLUSION**

19       Defendant Capito respectfully urges the Court to dismiss Plaintiffs' complaint in its

20  entirety for failure to state a claim upon which relief can be granted.

21       Respectfully submitted June 27, 2025,

22                     /s/ Lauren Regan
                Lauren Regan, Lead Counsel, *pro hac vice* pending
23                CIVIL LIBERTIES DEFENSE CENTER

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 15

24                                      CIVIL LIBERTIES DEFENSE CENTER
                                        1711 Willamette St Ste 301 # 359
                                        Eugene, OR 97401  (541) 687-9180

1

OSB 970878
1711 Willamette St Ste 301 # 359
Eugene, OR  97401
541-687-9180
lregan@cldc.org

2

3

4

Matthew Kellegrew, local counsel
CIVIL LIBERTIES DEFENSE CENTER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEF'S MTD FOR FAILURE TO STATE A CLAIM - 3:23-cv-01113-RAJ - Page 16

CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St Ste 301 # 359
Eugene, OR 97401  (541) 687-9180