CHRISTOPHER M. HOGUE, WSBA #48041
Hogue Law Firm
905 W. Riverside Ave., Ste. 402
Spokane WA 99201
Tel: (509) 934-1998
Email: chris@spokaneadvocate.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL GANCARZ, an individual; DANIEL TURETCHI, an individual; COLTON BROWN, an individual; JAMES JOHNSON and AMELIA JOHNSON, individually and husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID ALAN CAPITO II, aka VYACHESLAV ARKANGELSKIY, aka RYAN SMITH, an individual,<br><br>Defendant. | Case No. 2:23-cv-1113-RAJ<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL MOTION TO DISMISS PURSUANT TO WASHINGTON'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT**<br><br>Hearing Date: July 25, 2025<br><br>No Oral Argument Requested |

Plaintiffs Paul Gancarz, Daniel Turetchi, Colton Brown, James Johnson, and Amelia Johnson (together "Plaintiffs"), submit this memorandum in opposition to Defendant's Special Motion for to Dismiss Pursuant Washington's Uniform Public Expression Protection Act, RCW 4.105, *et seq*.

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
 - Page 1

## I.    INTRODUCTION

Mr. Capito's Special Motion to Dismiss under the Washington Uniform Public Expression Protection Act ("UPEPA"), RCW 4.105, *et seq.*, rests on a preposterous premise. This premise can be summarized as follows: Mr. Capito, so he asserts, had a First Amendment right to infiltrate a Patriot Front group, whose ideology he hated, through fraud and deception – the calculated and sustained use of a false identity; to then gain unauthorized access to confidential personal information about Plaintiffs from the group's computer databases; and to then transmit that confidential personal information to an ideological enemy of Patriot Front, which published it with the aim and successful result of doxxing Plaintiffs and causing them harassment and loss of employment, among other serious harms.

Mr. Capito claims he was acting in the public interest by his tortious and criminal conduct, but he could not be more wrong. As shown in this Response, the First Amendment analysis here protects Plaintiffs, not Mr. Capito. In fact, Mr. Capito betrayed the same First Amendment principles that he presently seeks to invoke. His UPEPA motion, accordingly, must be denied.

## II.    SUMMARY OF PLAINTIFFS' COMPLAINT

In their Complaint, Plaintiffs allege that they are members of, or have affiliation with, an organization called Patriot Front, whose mission is to

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 2

"reforge…our people, born to this nation of our European race…as a new collective capable of asserting our right to cultural independence." In accordance with this mission, members of Patriot Front sometimes engage in provocative activism. While provocative, this activism is nonviolent. In fact, Patriot Front prohibits its members from engaging in offensive violence. *Compl*. at ¶ 2.

Plaintiffs further allege that Patriot Front's mission and activism have aroused the antagonism of many persons and organizations, who have inflicted on Patriot Front members the harsh aspects of doxxing: physical violence, threats, harassment, losses of vocation, and defamation, to name a few. Patriot Front, accordingly, seeks to protect the confidentiality and privacy of its members' identities, as is their First Amendment right. *Compl*. at ¶ 3.

Plaintiffs further allege that Defendant Capito infiltrated Patriot Front using a false identity and later gained access to confidential information about Plaintiffs from Patriot Front's computer databases through unauthorized means. With the assistance (and possibly prior cooperation) of organizations such as Distributed Denial of Secrets, Inc. ("DDOS"), this confidential information was then widely published and used to harass and threaten the Plaintiffs, with the aim, and result, of doxxing them and other Patriot Front members and causing them serious harm, including loss of their jobs. *Compl*. at ¶ 4.

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 3

Plaintiffs further allege that Mr. Capito's history reveals a proclivity to violence, acts of harassment, and computer hacking. *Compl.* at ¶16. Plaintiffs further allege that in late July 2021, Mr. Capito joined Patriot Front with the goal of infiltrating the group and causing harm to its members. By using the false name and identity of "Vincent Washington" and lying about his background and values, Mr. Capito convinced Patriot Front to accept him for membership. *Id.* at ¶ 20.

Mr. Capito was instructed that, although Patriot Front prohibits offensive violence by its members and seeks to exercise its advocacy within First Amendment boundaries, in light of the possibility of malicious doxxing, any information he obtained regarding Patriot Front members or potential members was to be kept confidential. Mr. Capito disregarded these instructions and never intended to follow them. *Compl.* at ¶ 21.

Because of Mr. Capito's experience as a professional photographer, Patriot Front assigned him to take photos for some of their local get-togethers in the Pacific Northwest. When no one was watching, Mr. Capito abused his role by taking photographs of members' license plates and other personal information in order to expose their identities later. *Compl.* at ¶ 22. Using his false identity, Mr. Capito also ingratiated himself into the social circles of some Patriot Front members, where he used hidden microphones and cameras to unlawfully record them. *Id.* at ¶ 23.

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 4

In or about November 2021, Mr. Capito got in touch with DDOS, a group of anarchist hackers who were responsible for major security breaches targeting right-wing websites. DDOS assisted him in exploiting Patriot Front's chat platform to obtain access to private chatrooms. *Compl.* at ¶ 24. Specifically, Mr. Capito used his access to the Patriot Front server to execute a session hijack attack, a sophisticated type of cyber-attack which grants the attacker administrator level privileges to information stored on the target server which he would not have otherwise had access to. In an attempt to distract from this attack and ensure its success, Mr. Capito also conducted a simultaneous denial of service attack against Patriot Front's website. *Id.* at ¶ 25.

Using his unauthorized administrator privileges in the chat server, Mr. Capito was able to download private chats and intercept video links, which were later published on the DDOS website. He was exposed by Patriot Front's security team in mid-December 2021, and his fraudulently-obtained and unauthorized access was removed. *Compl*. at ¶ 26.

Mr. Capito also used the confidential information that he had improperly obtained to harass Patriot Front members by trespassing on their property, slashing the tires on their automobiles, circulating flyers and posters in their neighborhoods, and other harassment tactics. *Compl*. at ¶ 27. As described above, Mr. Capito led a

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 5

coordinated doxxing campaign against the Plaintiffs and other Patriot Front members. This coordinated doxxing campaign had multiple phases or components. *Id.* at ¶ 28.

First, Mr. Capito, using fraudulent, unlawful, and tortious means, obtained sensitive and confidential information regarding Plaintiffs, including their home addresses, places of employment, and social activities, such as their health club membership information. *Compl.* at ¶ 29.

Second, Mr. Capito and his accomplices arranged to widely publish this sensitive and confidential information, with the aim and result of harming Plaintiffs in their vocations and personal lives. *Compl.* at ¶ 30

Third, in conjunction with and/or separate from the publication of the confidential and sensitive information, Mr. Capito and his accomplices exploited the information to physically harm, harass, and threaten Plaintiffs at their homes, places of employment, or elsewhere, by trespassing on their property, making harassing telephone calls, slashing automobile tires, placing hostile flyers in Plaintiffs' neighborhoods, and other means. *Compl.* at ¶ 31.

Based on these factual allegations, Plaintiffs allege six causes of action: I - Federal Computer Fraud and Abuse Act;  II – Invasion of Privacy (Intrusion on Private Affairs);  III – Invasion of Privacy (Publicity to Private Facts);  IV – Virginia

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 6

Computer Trespass Act;  V – Maryland Unauthorized Access to Computer Act;  and VI (Fraud / Misrepresentation).

### III.    OVERVIEW OF WASHINGTON'S UPEPA STATUTE

The UPEPA envisions a procedure that allows for the speedy and early resolution of SLAPP (Strategic Lawsuits Against Public Participation) lawsuits. *Thurman v. Cowles Co.*, 4 Wash.3d 291, 298, 562 P.3d 777 (2025) (citing RCW 4.105.010). Such proceedings are sometimes described as lawsuits "that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Valve Corp. v. Butcher L. PLLC*, __ Wash. App. 2d __ (June 30, 2025) (quoting *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 923 (9th Cir. 2022)).

"The specific timeline of events under a UPEPA challenge are as follows: First, it applies only to a cause of action against a party based on the person's exercise of the constitutional right of freedom of speech or of the press on a matter of public concern." *Thurman*, 4 Wash.3d at 298 (citing RCW 4.105.010(2)(c)). "If the UPEPA applies, the opposing party, after being served with the complaint, cross-claim, or other pleading asserting a claim that is subject to the act, has 60 days to file a "special motion for expedited relief" to dismiss the cause of action." *Id.* (citing RCW 4.105.020(2)). "Upon giving notice of intent to file a motion under RCW

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 7

4.105.020(1), all proceedings between the moving and responding parties, including discovery and pending motions, are stayed." *Id.* at 298 (citing RCW 4.105.030).

For UPEPA analysis, Washington courts "engage in the three-step analysis dictated by RCW 4.105.060(1)." *Jha v. Khan*, 24 Wash. App. 2d 377, 388, 520 P.3d 470 (2022). First, it is the moving party's burden to establish that UPEPA applies to the cause of action. *Id*. at 387; RCW 4.105.060(1)(a). Second, once the moving party has satisfied this requirement, the burden shifts to the responding party to establish that a statutory exception applies under RCW 4.105.060(1)(b). *Jha*, 24 Wash. App. 2d at 387. And third, if the responding party fails to demonstrate that an exception applies, the trial court must dismiss the action if either:

> (i) The responding party fails to establish a prima facie case as to each essential element of the cause of action; or
>
> (ii) The moving party establishes that:
>
> (A) The responding party failed to state a cause of action upon which relief can be granted; or
>
> (B) There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

RCW 4.105.060(1)(c).

"In ruling on a motion under RCW 4.105.020, the court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 8

could be considered in ruling on a motion for summary judgment under CR 56." *Thurman*, 4 Wash.3d at 298 (citing RCW 4.105.050). The court must dismiss the cause of action or part of the cause of action only if the three conditions are met. *Thurman*, 29 Wash. App. 2d 230, 238, 541 P.3d 403 (2024), *rev'd on other grounds*, 4 Wash.3d 291. Where the moving party fails the meet these conditions, the respondent can "recover fees, if the court finds that the motion was not substantially justified or was brought solely to delay the proceeding." *Thurman*, 4 Wash.3d at 299 (citing RCW 4.105.090).

## IV.   ARGUMENT

### A.    Defendant Capito Cannot Meet His Burden of Demonstrating that Plaintiffs' Causes of Action are Based upon His Exercise of Freedom of Speech on a Matter of Public Concern.

Application of the UPEPA can only arise if Defendant Capito meets his burden to establish that Plaintiffs' causes of action are based upon his exercise of freedom of speech on a matter of public concern. RCW 4.105.010(2)(c). Mr. Capito's scant analysis of his UPEPA burden and his alleged freedom of speech activities in his Motion is indicative of a motion that has no real justification and was filed simply for purposes of delay. But because the Motion was filed, Plaintiffs must respond to Mr. Capito's frivolous arguments.

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 9

Essentially, Mr. Capito asserts as the basis for his UPEPA claim that he had a First Amendment right to deceitfully and illegally infiltrate the organization of which Plaintiffs were members, obtain confidential and sensitive information about them through unauthorized means, and then utilize and publicize this information in order to target and doxx Plaintiffs for purposes of harm, harassment, and intimidation. Mr. Capito has the First Amendment analysis exactly backwards. Plaintiffs were the ones exercising their First Amendment rights and Mr. Capito, through fraudulent and illegal tactics, maliciously sought to and did impair those rights.

A long tradition of U.S. Supreme Court and other federal cases upholds the First Amendment rights of groups of persons holding controversial views to protect the confidentiality and even anonymity of their members' identifying information. A related line of First Amendment cases recognizes that the use of fraud or illegal means to obtain information is not sanctioned by the First Amendment.

The Supreme Court and lower federal courts have been solicitous to protect the privacy of membership information for unpopular organizations, because they have recognized the profound effect public disclosure of such information has on the fundamental right to freedom of association. The Supreme Court's decision in *NAACP v. Patterson*, 357 U.S. 449 (1957), in which the court refused to permit the

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 10

compelled disclosure of the membership lists of the NAACP, is a seminal case. There, the court stated:

> This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. . . . Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is of the same order. Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.

357 U.S. at 462.

The Supreme Court's stalwart defense of the rights to privacy and freedom of association of supporters of dissident beliefs has continued in subsequent cases, both in the Supreme Court and in the lower federal courts. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 69 (2006) ("[F]reedom of expressive association protects more than just a group's membership decisions. For example, we have held laws unconstitutional that require disclosure of membership lists for groups seeking anonymity, or impose penalties or withhold benefits based on membership in a disfavored group") (citations omitted); *Brown v. Socialist Workers' 74 Campaign Comm.*, 459 U.S. 87, 95-101 (1982); *Black Panther Party v. Smith*, 661 F.2d 1243, 1265, 1268 (D.C. Cir. 1981), *vacated on mootness grounds*, 458 U.S. 1118 (1982) ("Privacy is particularly important where the group's cause is unpopular; once the participants lose their anonymity, intimidation and suppression may follow.");

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 11

*International Action Center v. U.S.*, 207 F.R.D. 1, 3 (D.D.C. 2002) (First Amendment speech and association rights of political action groups precluded government from obtaining through discovery names and addresses of persons who attended protests during presidential inauguration parade); *Sexual Minorities of Uganda v. Lively*, 2015 WL 4750931 at * 3 (D. Mass. Aug. 10, 2015) (applying principles from *NAACP v. Patterson* to discovery dispute).

The Supreme Court recently reaffirmed these principles in *Americans for Prosperity Foundation, v. Bonta,* 141 S.Ct. 2373 (2021), when it struck down as violating the First Amendment a California law that required disclosure of the identities of donors to charitable entities. The Court summarized:

> The First Amendment prohibits government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." This Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). Protected association furthers "a wide variety of political, social, economic, educational, religious, and cultural ends," and "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Ibid*.
>
> We have also noted that "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462, 78 S.Ct. 1163, 2

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 12

L.Ed.2d 1488 (1958). *NAACP v. Alabama* involved this chilling effect in its starkest form. The NAACP opened an Alabama office that supported racial integration in higher education and public transportation. *Id.*, at 452, 78 S.Ct. 1163. In response, NAACP members were threatened with economic reprisals and violence. Id., at 462, 78 S.Ct. 1163. As part of an effort to oust the organization from the State, the Alabama Attorney General sought the group's membership lists. Id., at 452–453, 78 S.Ct. 1163. We held that the First Amendment prohibited such compelled disclosure. Id., at 466, 78 S.Ct. 1163. We explained that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association," *id.*, at 460, 78 S.Ct. 1163, and we noted "the vital relationship between freedom to associate and privacy in one's associations," *id.*, at 462, 78 S.Ct. 1163. . . .

A related constitutional principle also fatally undermines Mr. Capito's invocation of UPEPA, namely that the First Amendment does not protect or sanction obtaining information tortiously or unlawfully. The case of *Council on American-Islamic Relations Network v. Gaubatz,* 793 F. Supp. 2d 311 (D.D.C. 2011) illustrates this principle, and the facts in *Gaubatz* resemble those of the instant case in many important respects.

In *Gaubatz*, a National Muslim advocacy organization brought an action against a former intern with the organization and his father, among others, for conversion, breach of fiduciary duty, trespass, and violations of the Stored Communications Act, alleging that, as consequence of the intern's use of a false identity and other false representations and material omissions, the defendants

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 13

unlawfully obtained access to the organization's facilities and documents and subsequently publicly disclosed and published many of those documents. The intern and other defendants, invoking the First Amendment, moved to dismiss the National Muslim advocacy organization's claims, but the court rejected defendants' First Amendment argument and denied their motion to dismiss. *Id*. at 331-32.

In rejecting the defendant's First Amendment arguments, the *Gaubatz* court stated:

> The First Amendment embodies our national commitment to the free exchange of ideas, but its protections are not boundless. *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). The heart of the Gaubatz Defendants' defense to this action is their contention that the First Amendment either protects their conduct or bars Plaintiffs from obtaining any relief. It is not always easy to reconcile the freedoms afforded by the First Amendment with the protections afforded to individuals by various statutes and the common law, but this much is clear: the protections afforded by the First Amendment, far reaching as they may be, do not place the unlawful acquisition of information beyond the reach of judicial review. Because that is precisely what is at issue in this action, the First Amendment does not require dismissal of Plaintiffs' claims against the Gaubatz Defendants at this time.

793 F. Supp. 2d at 330-31.

As these cases make clear, Plaintiffs' right to the confidentiality of their personal information was protected under the First Amendment. Mr. Capito, far from advancing his own First Amendment rights, was violating those of Plaintiffs through

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 14

his unlawful and unauthorized actions. Accordingly, on these points alone he cannot meet his burden of establishing the initial prerequisite for a UPEPA claim.

Mr. Capito also cannot meet his burden of demonstrating UPEPA's applicability to this suit due to the simple fact that the Supreme Court has long held that "speech integral to criminal conduct" does not enjoy First Amendment protections. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949); *U.S. v. Stevens*, 559 U.S. 460, 468-69 (2010). At the heart of Plaintiffs' allegations is that Mr. Capito engaged in unauthorized and unlawful conduct in his obtaining and publicizing of Plaintiffs' confidential and sensitive information. *Compl.* at ¶¶ 20-36. Mr. Capito's conduct implicates and is consistent with Washington's prohibitions on such criminal activity. *See* RCW 9A.46.020 (harassment); RCW 9A.52.070, .080 (trespass); RCW 9A.60.040, .045 (impersonation); RCW 9.73.030, .080 (wiretapping). Mr. Capito attempts to hide behind the First Amendment in this respect cannot stand. *See U.S. v. Osinger*, 753 F.3d 939, 946-48 (9th Cir. 2014) ("Any expressive aspects of Osinger's speech were not protected under the First Amendment because they were 'integral to criminal conduct' in intentionally harassing, intimidating or causing substantial emotional distress to V.B."); *U.S. v. Gonzalez*, 905 F.3d 165, 193 (3d Cir. 2018) (defendant's speech was unprotected as

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 15

speech integral to criminal conduct because it "served no legitimate purpose other than to harass and intimidate Belford").

Mr. Capito also makes no attempt to demonstrate the second aspect of the initial analysis on whether the UPEPA even applies. As discussed, he has failed to establish that Plaintiffs' causes of action are based upon his exercise of freedom of speech, but secondarily he has also not demonstrated that Plaintiffs' confidential and sensitive information are a matter of public concern. As a matter of law, he cannot demonstrate this second point, and thus his UPEPA challenge fails.

Whether speech is on a matter of public concern is a question of law, which courts determine "'by the content, form, and context of a given statement, as revealed by the whole record.'" *Jha*, 24 Wash. App. 2d at 389 (quoting *Billings v. Town of Steilacoom*, 2 Wash. App. 2d 1, 31, 408 P.3d 1123 (2017)). "Speech involves 'matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Spratt v. Toft*, 180 Wash. App. 620, 632, 324 P.3d 707 (2014) (internal quotation marks omitted) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

As outlined above, the confidentiality and even anonymity of individuals' membership in organizations is a fundamental protection under the First Amendment's freedom of association. Because of this, organizational membership

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 16

and its members' identifying information can never, as a matter of law, involve a matter of public concern. This is one reason why Mr. Capito's Motion is not substantially justified, as it could never succeed under this UPEPA analysis.

Moreover, Washington now specifically prohibits via statute the unauthorized publication of an individual's personal identifying information in this regard. *See* RCW 4.24.792. In enacting this anti-doxxing law, legislators recognized that criminal law and civil torts likely already prohibited such activity, but wanted more specific anti-doxxing legislation to ensure that there were no loopholes. *See* Final Bill Report ESHB 1335, C 381 L 23 (stating that doxxing was not specifically prohibited in Washington, but recognizing that such conduct generally fell under other similar criminal and civil prohibitions: "Depending on the specific circumstances, information disclosed, and additional facts, the underlying conduct could qualify as a criminal offense (for example, harassment or stalking) or an actionable civil tort (for example, invasion of privacy or intentional infliction of emotional distress)."). Mr. Capito's conduct has never been protected under the First Amendment or Washington law.

**B.    Statutory Exceptions Apply.**

Plaintiffs submit that Defendant Capito's inability to demonstrate he had a First Amendment right to infiltrate and subvert the Patriot Front group using fraud,

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 17

deceit, and unlawful or unauthorized means is dispositive of his UPEPA claim and ends the analysis. Assuming *arguendo*, however, that it were necessary to address the second step – analysis of the UPEPA statutory exceptions under RCW 4.105.010(3) – several of them apply to all of Plaintiffs' causes of actions.

The UPEPA does not apply to any claim brought under federal law. RCW 4.105.010(3)(a)(xii). Plaintiffs' first cause of action under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, claim is excepted from the UPEPA. Even Mr. Capito recognizes as much and does not challenge this cause of action in his Motion.

The UPEPA does not apply to common law fraud claims. RCW 4.105.010(3)(a)(viii). Plaintiff Brown's claim for common law fraud (cause of action six) is excepted from the UPEPA. Even Mr. Capito recognizes as much and does not challenge this cause of action in his Motion.

The UPEPA does not apply to a cause of action against a person named in a civil suit brought by a victim of a crime against a perpetrator. RCW 4.105.010(3)(a)(iv). Plaintiff Gancarz's claim under the Virginia Computer Trespass Act ("VCTA"), § 18.2-152.12 (cause of action four), is excepted from the UPEPA. The VCTA provides civil relief to victims of computer crimes. The claim falls under Article 7.1 (computer crimes) of Chapter 5 (crimes against property) of Title 18.2

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
 - Page 18

(crimes and offenses generally) of the Code of Virginia. Mr. Gancarz's claim under this cause of action is as a victim of a computer crime against Mr. Capito, the perpetrator, and he has alleged all necessary elements under the statute.

Likewise, Plaintiff Turetchi's claim under the Maryland Unauthorized Access to Computers Act (MUACA), Maryland Criminal Law § 7-302 (cause of action five), is excepted from the UPEPA. Like the VCTA, the MUACA is a computer crime law that provides for civil relief to victims of such crimes. § 7-302(g). Mr. Turetchi's claim under this cause of action is as a victim of a computer crime against Mr. Capito, the perpetrator, and he has alleged all necessary elements under the statute.

The UPEPA does not apply to causes of action involving the infliction of emotional distress. RCW 4.105.010(3)(a)(viii). Plaintiffs' two invasion of privacy claims – intrusion on private affairs and giving publicity to private facts – led to threats, harassment, and losses of vocation and pertain to such emotional distress under the UPEPA. *See Compl.* at ¶¶ 45-46, 50-52. RCW 4.105.010(3)(a)(iv)'s exception of a cause of action based upon a victim of a crime (Plaintiffs) against a perpetrator (Mr. Capito) would also apply to these invasion of privacy claims, as these causes of actions stem from Mr. Capito's unlawful and criminal conduct. These invasion of privacy claims are excepted from the UPEPA.

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
 - Page 19

Based on the foregoing, the UPEPA's statutory exceptions apply to all of Plaintiffs' causes of action, once again demonstrating that Mr. Capito's Motion lacks any substantial justification.

**C.    Plaintiffs Have Plausibly Alleged All Necessary Elements of the Challenged Claims.**

If it is even necessary to reach the third step of the UPEPA analysis, Defendant Capito's Motion again fails under this step. The third step of the UPEPA analysis pertains to situations where the responding party fails to demonstrate that an exception applies, leading to a trial court dismissing a cause of action only where either:

> (i) The responding party fails to establish a prima facie case as to each essential element of the cause of action; or
>
> (ii) The moving party establishes that:
>
> (A) The responding party failed to state a cause of action upon which relief can be granted; or
>
> (B) There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

RCW 4.105.060(1)(c).

"In ruling on a motion under RCW 4.105.020, the court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 20

could be considered in ruling on a motion for summary judgment under CR 56." *Thurman*, 4 Wash.3d at 298 (citing RCW 4.105.050).

RCW 4.105.060(1)(c)(ii)(A) imports CR 12's requirement for judgment on the pleadings. *Valve*, __ Wash. App. 2d __ (June 30, 2025). The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion to dismiss. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Given that the instant case is at the pleadings stage, a Rule 12(b)(6) standard of review is appropriate.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). That means the "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the court must accept as true all factual allegations, *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 969 (9th Cir. 2017), draw all reasonable inferences in favor of the non-moving party, *id.*, and take care to "examine the allegations of the complaint as a whole," *Khachatryan v. Blinken*, 4 F.4th 841, 854 (9th Cir. 2021). A "judge's disbelief of a complaint's factual allegations" is not grounds for dismissal

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 21

on a motion to dismiss. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A claim may be dismissed only if "it appears **beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (emphasis added).

Plaintiffs have addressed RCW 4.105.060(1)(c)(i) and (ii), i.e., the failure to state a claim standard, in Plaintiffs' Response to Defendant's Motion to Dismiss under Rule12(b)(6), which was filed simultaneously with Defendant's instant Motion. Plaintiffs respectfully incorporate that response brief as to the contested causes of action into this Response, but reiterate this opposition below.

As to Plaintiffs' invasion of privacy causes of action, Washington's Constitution expressly confers a right to privacy. Article I, Section 7, states: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Washington recognizes several invasion-of-privacy torts, including two that are noted here: (1) intrusion on private affairs and (2) giving publicity to private facts.

The Washington Supreme Court has recognized the common law right of privacy. *Reid v. Pierce County*, 136 Wash.2d 195, 206, 961 P.2d 333 (1998). Washington courts look to the *Restatement (Second) of Torts* for the "guiding principles" of this cause of action. *Reid*, 136 Wash.2d at 206. With respect to

1    intrusion on private affairs, the *Restatement (Second) of Torts* section 652B (1977)

2    provides: "One who intentionally intrudes, physically or otherwise, upon the solitude

3    or seclusion of another or his private affairs or concerns, is subject to liability to the

4    other for invasion of his privacy, if the intrusion would be highly offensive to a

5    reasonable person." In *Mark v. KING Broadcasting Co.*, Division One of the

6    Washington Court of Appeals said, "[t]he invasion or intrusion must be of something

7    which the general public would not be free to view." 27 Wash. App. 344, 356, 618

8    P.2d 512 (1980).

9         Plaintiffs' Complaint raises a plausible invasion of privacy claim for intrusion

10    on private affairs that rises above the speculative level. The Complaint sufficiently

11    alleges that Mr. Capito intentionally intruded upon the private affairs and personal

12    identifying information of Plaintiffs within their protected organizational

13    membership and association through unlawful, unauthorized, and deceptive or

14    fraudulent means. The Complaint also sufficiently alleges that this information was

15    not available to the general public, and that Mr. Capito disseminated, or assisted in,

16    the private information to the general public. The First Amendment jurisprudence,

17    and Washington's anti-doxxing statute and prior common law history, make clear

18    that the revealing of this confidential and sensitive information to the general public

19    would be highly offensive to those reasonable members of an organization like

20    PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S

21    UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 23

Patriot Front, who took steps to protect its members' privacy and maintain the confidentiality of its members' identities. At minimum, whether something is highly offensive to a reasonable person in this situation has certainly be pled and would, in any event, be an issue of fact for a jury at a later stage. *See White v. Town of Winthrop*, 128 Wn. App. 588, 596, 116 P.3d 1034 (2005) (citations omitted) ("Similarly, in Washington, when reasonableness is a material issue in litigation, whether a party acts reasonably is generally a question of fact, and summary judgment is inappropriate.").

Furthermore, Plaintiffs allege that Mr. Capito and his accomplices exploited the information to physically harm, harass, and threaten Plaintiffs at their homes, places of employment, or elsewhere, by trespassing on their property, making harassing telephone calls, slashing automobile tires, placing hostile flyers in Plaintiffs' neighborhoods, and other means. *Compl*. at ¶ 31. This is certainly sufficient to plausibly establish a claim for invasion of privacy by intrusion on private affairs.

Mr. Capito's argument ignores all of this and essentially argues that Plaintiffs had no reasonable expectation of privacy in their personal and identifying information because, according to Mr. Capito, Plaintiffs espouse hateful views and therefore should expect to be doxxed and harassed by people such as Mr. Capito.

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 24

1   This assertion directly contradicts the many Supreme Court and other cases cited

2   above in this memorandum, which uphold on First Amendment grounds the privacy

3   and confidentiality of identifying information of members of controversial

4   organizations. Plaintiffs had a reasonable expectation of privacy in their personal

5   identifying information because the Supreme Court and other courts have repeatedly

6   said they have such privacy. The Courts have made no exception for organizations

7   or viewpoints Mr. Capito does not like.

8       With respect to invasion of privacy for publication of private facts, this tort

9   occurs when the matter publicized is of a kind that (1) would be highly offensive to

10  a reasonable person and (2) is not of legitimate concern to the public. *See*

11  Restatement (Second) of Torts § 652D; *Reid v. Pierce Cty.*, 136 Wash.2d 195, 205,

12  961 P.2d 333 (1998). To state a claim for the tort, it does not suffice to show merely

13  that the defendant disseminated the information. Rather, the defendant must

14  "publicize" the information. "Publicity" means "the matter is made public, by

15  communicating it to the public at large, or to so many persons that the matter must

16  be regarded as substantially certain to become one of public knowledge."

17  Restatement (Second) of Torts § 652D (1977), comment a.

18      Plaintiffs' Complaint likewise raises a plausible invasion of privacy claim for

19  publication of private facts that rises above the speculative level. The Complaint

20  PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
    MOTION TO DISMISS PURSUANT TO WASHINGTON'S
21  UNIFORM PUBLIC EXPRESSION PROTECTION ACT
    - Page 25

1  sufficiently alleges that Mr. Capito publicized, and/or assisted in the publication of,

2  information by making Plaintiffs' confidential and anonymous membership

3  identities public and communicating them to the public at large. As stated above,

4  this would be offensive to a reasonable person in Plaintiffs' position, and there is no

5  basis to suggest that Plaintiffs' information was of any legitimate concern to the

6  public – First Amendment and Washington jurisprudence holding to the contrary.

7  Furthermore, in Washington, the right to privacy acknowledges that the

8  reason a person wishes to keep his or her illness confidential is to avoid the pity that

9  knowledge of such a disease would engender in others. *See Cowles Publ'g Co. v.*

10 *State Patrol*, 109 Wash.2d 712, 721, 748 P.2d 597 (1988) (quoting Restatement,

11 §652D cmt. b, at 386), *quoted in Reid*, 136 Wn.2d at 210. This reasoning is no

12 different than Plaintiffs' right of privacy in keeping their identities and membership

13 in an organization anonymous or confidential to avoid threats and harassment for

14 their unpopular viewpoints.

15 As to Plaintiff Gancarz's and Turetchi's claims for civil relief under the

16 computer crime laws of the VCTA and MUACA, respectively, Mr. Capito's Rule

17 12(b)(6) Motion to Dismiss is based on the proposition that the Virginia and

18 Maryland statutes at issue do not allow the type of damages that Plaintiffs seek. As

19 explained in Plaintiffs' Response to that motion, and incorporated herein, the

20 PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
   MOTION TO DISMISS PURSUANT TO WASHINGTON'S

21 UNIFORM PUBLIC EXPRESSION PROTECTION ACT
   - Page 26

statutory language in both instances does not contain the damages limitation that Mr. Capito asserts.

Lastly, as to any consideration of RCW 4.105.060(1)(c)(ii)(B) – the summary judgment standard – Mr. Capito, who has the burden, has brought forward no admissible evidence that "[t]here is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The only "evidence" he has suggested consists of Internet links and media reports, which, as to their alleged factual content (which Plaintiffs vigorously dispute and which contradict the allegations in Plaintiffs' Complaint, e.g., ¶ 2), are obviously hearsay and moreover not suitable for judicial notice. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.,* 899 F.2d 988, 999, 1000 (9th Cir. 2018) (warning against misuse of judicial notice at pleading stage to allow defendants to "present their own version of the facts" and rejecting judicial notice of transcript that was subject to varying interpretations); *Lee v. Plex,* 773 F.Supp.3d 755, 773 (N.D. Cal. 2025) (On a motion to dismiss, court cannot take judicial notice of disputed facts in online article for purpose of creating defense against well-pleaded allegations in a complaint); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger,* 146 F.3d 66, 70 (2d Cir. 1998) ("Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be sued

in determining that a fact is beyond controversy under FRE 201(b)") (citing FRE 201(b) advisory committee notes).

### D. Defendant Capito's UPEPA Motion to Dismiss Is Not Substantially Justified and/or Was Filed Solely with Intent to Delay These Proceedings.

RCW 4.105.090(2) provides for an award of costs, reasonable attorney's fees, and reasonable litigation expenses related to Defendant Capito's UPEPA motion to dismiss when the "responding party prevails on the motion and the court finds that the motion was not substantially justified or filed solely with intent to delay the proceeding." Thus, for an award of costs and fees, Plaintiffs may show either of these two propositions. In this case, both are present.

Mr. Capito's motion is clearly not substantially justified. His inapt motion, thrown together in the span of a couple pages that lack any substantive factual or legal arguments or analysis, willfully ignores well-established First Amendment law on the freedom of association and the privacy in one's associations. It also willfully ignores the factual allegations that Mr. Capito engaged in and utilized unlawful and unauthorized means to obtain and publicize Plaintiffs' protected information. Mr. Capito did not bother to analyze these facts or the cases cited above (likely knowing that such established law was completely contrary to his position) that are directly on point with respect to all of these issues. Mr. Capito's Motion also ignores that all

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
- Page 28

1    of the causes of action have a clear UPEPA statutory exception and that Plaintiffs'

2    claims have been plausibly pled. Mr. Capito's motion lacks any semblance of having

3    a substantial basis.

4         Mr. Capito's motion was also clearly filed to delay these proceedings. This

5    has been evident from the outset of this case, where service by publication was

6    necessary because of Mr. Capito's obvious evading of service of process. To that

7    end, magically, when service by publication was completed after many weeks of the

8    Summons running in the Seattle Times, Mr. Capito immediately appeared through

9    counsel and provided notice that he was filing a UPEPA motion to dismiss, which

10   works to stay all proceedings and even potentially grants a stay for an appeal (though

11   this may not be allowed under federal procedure). *See* RCW 4.105.030; RCW

12   4.105.080. Mr. Capito could have simply filed a Rule 12(b)(6) motion, as he did,

13   without filing his frivolous UPEPA motion, and there would be no issue. But he

14   chose to file this Motion in order to obtain further delay, through extra work, stay of

15   proceedings, and potentially an appeal.

16        For these reasons, this Court should award Plaintiffs their costs, fees, and

17   expenses associated with responding to this Motion.

18

19

20   PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
     MOTION TO DISMISS PURSUANT TO WASHINGTON'S
21   UNIFORM PUBLIC EXPRESSION PROTECTION ACT
     - Page 29

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that Defendant's UPEPA Motion to Dismiss be denied and that Plaintiffs be award their costs, fees, and expenses associated with responding to this Motion.

I certify this memorandum contains 6,422 words in compliance with LCR 7(e)(3) for a response to a motion to dismiss.

DATED this 18th day of July 2025.


HOGUE LAW FIRM

/s/ *Christopher M. Hogue*
Christopher M. Hogue
WSBA #48041
Attorney for Plaintiffs

**CM/ECF CERTIFICATE OF SERVICE**

I certify that on the date indicated below I caused an electronic copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF system which will then send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED this 18th day of July 2025.

s/ *Christopher M. Hogue*
Attorney for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANT'S SPECIAL
MOTION TO DISMISS PURSUANT TO WASHINGTON'S
UNIFORM PUBLIC EXPRESSION PROTECTION ACT
 - Page 31