CHRISTOPHER M. HOGUE, WSBA #48041
Hogue Law Firm
905 W. Riverside Ave., Ste. 402
Spokane WA 99201
Tel: (509) 934-1998
Email: chris@spokaneadvocate.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAUL GANCARZ, an individual; DANIEL TURETCHI, an individual; COLTON BROWN, an individual; JAMES JOHNSON and AMELIA JOHNSON, individually and husband and wife, <br><br> Plaintiffs, <br><br> vs. <br><br> DAVID ALAN CAPITO II, aka VYACHESLAV ARKANGELSKIY, aka RYAN SMITH, an individual, <br><br> Defendant. | Case No. 2:23-cv-1113-RAJ <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS** <br><br> Hearing Date: July 25, 2025 <br><br> No Oral Argument Requested |

    Plaintiffs Paul Gancarz, Daniel Turetchi, Colton Brown, James Johnson, and

Amelia Johnson (together "Plaintiffs"), submit this memorandum in opposition to

Defendant's Motion for to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

*//*

*//*

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
 - Page 1

## I.    INTRODUCTION

In this case, Plaintiffs have alleged with particularity that Defendant Capito infiltrated their organization, whose ideology he hated, by means of fraud and deception – the calculated and sustained use of a false identity; to then gain unauthorized access to confidential personal information about Plaintiffs from the group's computer databases; and then transmit that confidential personal information to an ideological enemy of Patriot Front, which published it with the aim and successful result of doxxing Plaintiffs and causing them serous harms, including harassment and loss of employment, among other serious harms. Mr. Capito, through his motion under Fed. R. Civ. P. 12(b)(6), contends Plaintiffs have no viable causes of action whatsoever based upon their allegations. As explained in this Response, however, all of Plaintiffs' claims are viable and well-pleaded. Mr. Capito's motion, accordingly, must be denied.

## II.    SUMMARY OF PLAINTIFFS' COMPLAINT

In their Complaint, Plaintiffs allege that they are members of, or have affiliation with, an organization called Patriot Front, whose mission is to "reforge…our people, born to this nation of our European race…as a new collective capable of asserting our right to cultural independence." In accordance with this mission, members of Patriot Front sometimes engage in provocative activism. While

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 2

provocative, this activism is nonviolent. In fact, Patriot Front prohibits its members from engaging in offensive violence. *Compl.* at ¶ 2.

Plaintiffs further allege that Patriot Front's mission and activism have aroused the antagonism of many persons and organizations, who have inflicted on Patriot Front members the harsh aspects of doxxing: physical violence, threats, harassment, losses of vocation, and defamation, to name a few. Patriot Front, accordingly, seeks to protect the confidentiality and privacy of its members' identities, as is their First Amendment right. *Compl.* at ¶ 3.

Plaintiffs further allege that Defendant Capito infiltrated Patriot Front using a false identity and later gained access to confidential information about Plaintiffs from Patriot Front's computer databases through unauthorized means. With the assistance (and possibly prior cooperation) of organizations such as Distributed Denial of Secrets, Inc. ("DDOS"), this confidential information was then widely published and used to harass and threaten the Plaintiffs, with the aim, and result, of doxxing them and other Patriot Front members and causing them serious harm, including loss of their jobs. *Compl.* at ¶ 4.

Plaintiffs further allege that Mr. Capito's history reveals a proclivity to violence, acts of harassment, and computer hacking. *Compl.* at ¶16. Plaintiffs further allege that in late July 2021, Mr. Capito joined Patriot Front with the goal of infiltrating the group and causing harm to its members. By using the false name and

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 3

identity of "Vincent Washington" and lying about his background and values, Mr. Capito convinced Patriot Front to accept him for membership. *Id.* at ¶ 20.

Mr. Capito was instructed that, although Patriot Front prohibits offensive violence by its members and seeks to exercise its advocacy within First Amendment boundaries, in light of the possibility of malicious doxxing, any information he obtained regarding Patriot Front members or potential members was to be kept confidential. Mr. Capito disregarded these instructions and never intended to follow them. *Compl.* at ¶ 21.

Because of Mr. Capito's experience as a professional photographer, Patriot Front assigned him to take photos for some of their local get-togethers in the Pacific Northwest. When no one was watching, Mr. Capito abused his role by taking photographs of members' license plates and other personal information in order to expose their identities later. *Compl.* at ¶ 22. Using his false identity, Mr. Capito also ingratiated himself into the social circles of some Patriot Front members, where he used hidden microphones and cameras to unlawfully record them. *Id.* at ¶ 23.

In or about November 2021, Mr. Capito got in touch with DDOS, a group of anarchist hackers who were responsible for major security breaches targeting right-wing websites. DDOS assisted him in exploiting Patriot Front's chat platform to obtain access to private chatrooms. *Compl.* at ¶ 24. Specifically, Mr. Capito used his access to the Patriot Front server to execute a session hijack attack, a sophisticated

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 4

type of cyber-attack which grants the attacker administrator level privileges to information stored on the target server which he would not have otherwise had access to. In an attempt to distract from this attack and ensure its success, Mr. Capito also conducted a simultaneous denial of service attack against Patriot Front's website. *Id.* at ¶ 25.

Using his unauthorized administrator privileges in the chat server, Mr. Capito was able to download private chats and intercept video links, which were later published on the DDOS website. He was exposed by Patriot Front's security team in mid-December 2021, and his fraudulently-obtained and unauthorized access was removed. *Compl.* at ¶ 26.

Mr. Capito also used the confidential information that he had improperly obtained to harass Patriot Front members by trespassing on their property, slashing the tires on their automobiles, circulating flyers and posters in their neighborhoods, and other harassment tactics. *Compl.* at ¶ 27. As described above, Mr. Capito led a coordinated doxxing campaign against the Plaintiffs and other Patriot Front members. This coordinated doxxing campaign had multiple phases or components. *Id.* at ¶ 28.

First, Mr. Capito, using fraudulent, unlawful, and tortious means, obtained sensitive and confidential information regarding Plaintiffs, including their home

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 5

addresses, places of employment, and social activities, such as their health club membership information. *Compl*. at ¶ 29.

Second, Mr. Capito and his accomplices arranged to widely publish this sensitive and confidential information, with the aim and result of harming Plaintiffs in their vocations and personal lives. *Compl*. at ¶ 30

Third, in conjunction with and/or separate from the publication of the confidential and sensitive information, Mr. Capito and his accomplices exploited the information to physically harm, harass, and threaten Plaintiffs at their homes, places of employment, or elsewhere, by trespassing on their property, making harassing telephone calls, slashing automobile tires, placing hostile flyers in Plaintiffs' neighborhoods, and other means. *Compl*. at ¶ 31.

Based on these factual allegations, Plaintiffs allege six causes of action: I - Federal Computer Fraud and Abuse Act;  II – Invasion of Privacy (Intrusion on Private Affairs);  III – Invasion of Privacy (Publicity to Private Facts);  IV – Virginia Computer Trespass Act;  V – Maryland Unauthorized Access to Computer Act;  and VI (Fraud / Misrepresentation).

### III.    RESPONSE TO DEFENDANT'S INFLAMMATORY CHARACTERIZATIONS OF PLAINTIFFS AND PATRIOT FRONT

To state the obvious, Defendant Capito and his allies and have a fervid ideological animus against Patriot Front and Plaintiffs. They are of course entitled

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
 - Page 6

to their viewpoint. They are not, however, entitled to make false and scurrilous statements about Patriot Front and Plaintiffs in order to have them accepted as true in support of a motion to dismiss, whether on a judicial notice theory or any other alleged grounds. Mr. Capito disparages Patriot Front as a "white supremacist" organization; Plaintiffs deny this is a fair characterization. *See* Complaint ¶ 2. Mr. Capito accuses Patriot Front and its members of advocating and participating in violence; Plaintiffs deny this as well. *Id*. Mercifully, we live under a legal system where plaintiffs are not denied their day in court merely because the defendant is skilled at verbal assassination.

Mr. Capito invokes the judicial notice doctrine in support of his tactics, but the doctrine does not sanction or support it. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.,* 899 F.2d 988, 999, 1000 (9th Cir. 2018) (warning against misuse of judicial notice at pleading stage to allow defendants to "present their own version of the facts" and rejecting judicial notice of transcript that was subject to varying interpretations); *Lee v. Plex,* 773 F.Supp.3d 755, 773 (N.D. Cal. 2025) (On a motion to dismiss, court cannot take judicial notice of disputed facts in online article for purpose of creating defense against well-pleaded allegations in a complaint); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger,* 146 F.3d 66, 70 (2d Cir. 1998) ("Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence,

caution must be sued in determining that a fact is beyond controversy under FRE 201(b)") (citing FRE 201(b) advisory committee notes). Plaintiffs' allegations are the focus of a motion to dismiss and are what must be taken as true at this stage.

## IV.    ARGUMENT

### A.    Rule 12(b)(6) Motion to Dismiss Standard.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). That means the "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the court must accept as true all factual allegations, *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 969 (9th Cir. 2017), draw all reasonable inferences in favor of the non-moving party, *id.*, and take care to "examine the allegations of the complaint as a whole," *Khachatryan v. Blinken*, 4 F.4th 841, 854 (9th Cir. 2021). A "judge's disbelief of a complaint's factual allegations" is not grounds for dismissal on a motion to dismiss. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A claim may be dismissed only if "it appears **beyond doubt** that the plaintiff can prove no set of

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
 - Page 8

facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (emphasis added).

### B.    Plaintiffs Have Plausibly Alleged a Claim under the Federal Computer Fraud and Abuse Act.

Defendant Capito seeks to advance a very narrow interpretation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, *et seq.*, such that it is limited under all circumstances to damages to a computer itself. This narrow interpretation, Plaintiffs submit, is inconsistent with the purpose and text of the Act. The critical section of the CFAA raised by the Mr. Capito's argument is § 1030(g). This section provides:

> (g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses 4 (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.

Interpreting this section requires a focus on the CFAA's definitions of "damage" and "loss." "Damage" is defined at § 1030(e)(8) as follows: "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." It may be, as Mr. Capito argues, that "damage" as thus

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 9

defined requires impairment to the integrity of a computer system. The CFAA definition of "loss," however, has no such limited scope. To the contrary, "loss" is defined at § 1030(e)(11) as follows: "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

This is a rather broad and flexible definition, which should be construed in harmony with the everyday meaning of loss as "detriment, disadvantage, or deprivation from failure to keep, have, or get." *See  EF Cultural Travel BV v. Explorica, Inc*., 274 F.3d 577, 585 ((1st Cir. 2001), *abrogated on other grounds in Van Buren v. United States*) (citing Random House Dictionary of the English Language (2d ed. 1983)). Plaintiffs in this case decidedly suffered detriment, disadvantages, and deprivation from Mr. Capito's malicious actions.

A further focus on the CFAA's definition of "loss" shows that it allows recovery either for (1) "any reasonable cost to any victim, including the cost of responding to an offense, conducting damage assessment, and restoring the data, program, system, or information to its condition prior to the offense" or (2) "other consequential damages incurred because of interruption of service." The harms to the Plaintiffs fall within either of these prongs; they constituted "reasonable costs to

any victim" and  were "consequential damages because of an interruption of service."

As to the "interruption of service" prong, Mr. Capito will contend there was none. A case he cites, however, *United Federation of Churches v. Johnson*, 598 F.Supp.3d 1084 (W.D. 2022), supports an opposite conclusion. In that case this Court stated: "Defendants do not, however, provide the court with authority that supports the proposition that a plaintiff's loss of access to its computer, during which the defendant exerts control over that computer, cannot constitute an 'interruption of service.' TST contends that it meets the 'interruption of service' requirement: it alleges that it lost members (and the revenue associated with them) because Defendants 'stole' its website, thus interrupting the service Facebook provided to TST. . .  The court concludes that TST has plausibly alleged that it suffered 'loss' due to the loss of its members, which in turn was caused by Mr. Johnson's actions." *Id*. at 1099. In this case, Plaintiffs have alleged Mr. Capito disrupted and interfered with the proper functioning of their computer network, i.e., its preservation of the confidentiality of their valuable personal information. Such disruption and trespass, Plaintiffs submit, come fairly with the connotation of an "interruption of service."

Mr. Capito also cites the Ninth Circuit's decision in *Andrews v. Sirius XM Radio, Inc*., 932 F.3d 1253 (9th Cir. 2019). In that case the court stated: "We further observe that the CFAA is 'an anti-hacking statute,' not 'an expansive

misappropriation statute'. . . . The statute's 'loss' definition—with its references to damage assessments, data restoration, and interruption of service—clearly limits its focus to harms caused by computer intrusions, not general injuries unrelated to the hacking itself." *Id.* at 1263. Plaintiffs, however, are not seeking to use the CFAA has an "expansive misappropriation statute," but rather seek to hold Mr. Capito accountable for the consequences of his hacking, which was the precise purpose for which the CFAA was created.

### C.    Plaintiff Gancarz Has Plausible Alleged a Claim under the Virginia Computer Trespass Act.

Virginia's Computer Trespass Act ("VCTA"), § 18.2-152.4 and § 18.2-152.12, provides, in relevant part, as follows:

> A.   It is unlawful for any person, with malicious intent, or through intentionally deceptive means and without authority, to:…
>
> 6.   Use a computer or computer network to make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs or computer software residing in, communicated by, or produced by a computer or computer network;…

Section 18.2-152.4 (computer trespass; penalty).

With respect to civil relief for computer crimes under the VCTA, it provides, in relevant part:

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
- Page 12

A.    Any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152 regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit. Without limiting the generality of the term, "damages" shall include loss of profits.

Section 18.2-152.12 (Civil relief; damages).

The gist of Plaintiffs' allegations, and of those of Plaintiff Mr. Gancarz in particular for the VCTA, is that Defendant Capito gained unauthorized access to confidential information about Plaintiffs that was stored on a computer, and that he then duplicated and sent that information to DDOS as part of his malignant doxxing project. Mr. Capito's argument appears to be that the Virginia statute covers only "copying" in the sense used decades ago (i.e, making hard copy documents), but this interpretation is inconsistent with the clear aim of the statute and the modern practice of copy information by transferring it.

The case Mr. Capito cites, *Tryco, Inc. v. United States Med. Source*, 80 Va. Cir. 619, 629 (Cir. Ct. 2010), certainly does not support this strained interpretation. In *Tryco*, the plaintiff suffered no injury at all, in contrast to the serious injuries Mr. Gancarz suffered in this case. Nor is there any basis in the text of the Virginia statute for limiting damages only to harm to a computer. To the contrary, §152-12(A) specifically and broadly states that civil relief and damages are available to "any

person whose property **_or_** person is injured" and that the person "recover for **_any_**

damages sustained and the costs of suit." The statute also specifically indicates the

"generality of the term 'damages,'" demonstrating its broad intent. Plaintiff Gancarz

has plausibly alleged a claim under the VCTA.

    **D.**    **Plaintiff Turetchi Has Plausibly Alleged a Claim under the Maryland Unauthorized Access to Computer Act.**

Section 7-302 of the Maryland Code, Maryland Unauthorized Access to

Computers Act ("MUACA"), provides, in relevant part:

> (a)   (1)   In this section the following words have the meanings indicated.
>     (2)   "Access" means to instruct, communicate with, store data in, retrieve or intercept data from, or otherwise use the resources of a computer program, computer system, or computer network.
>
>       * * *
>
>  (c)   (1)   A person may not intentionally, willfully, and without authorization:
>         (i)   access, attempt to access, cause to be accessed, or exceed the person's authorized access to all or part of a computer network, computer control language, computer, computer software, computer system, computer service, or computer database; or
>         (ii)   copy, attempt to copy, possess, or attempt to possess the contents of all or part of a computer database accessed in violation of item (i) of this paragraph.
>
>       * * *

(g)    (1)    A person who has suffered a specific and direct injury because of a violation of this section may bring a civil action in a court of competent jurisdiction.

(2)    In an action under this subsection, the court may award actual damages and reasonable attorney's fees and court costs.

(3)    A conviction for an offense under this section is not a prerequisite for maintenance of an action under this subsection.

Defendant Capito's argument with regard to the MUACA is similar to his argument with regard to the VCTA – i.e, the Maryland statute does not cover Mr. Capito's conduct and is limited to damages to a computer. Mr. Capito's argument fails for the same reasons. As with the VCTA, the Maryland law is easily comprehensive enough to encompass Mr. Capito's actions. It prohibits unauthorized "access" to a computer, which is broadly defined and certainly applies to Mr. Capito's conduct; and further prohibits "possess[ing], or attempt[ing] to possess the contents of all or part of a computer database," which also clearly applies. And far from limiting damages to harm to a computer, it provides a civil action for "a] person who has suffered a specific and direct injury because of a violation of this section." Plaintiff Turetchi has fully alleged he suffered such a specific and direct injury, and thus has plausibly alleged a claim under the MUACA.

**E.    Plaintiffs Have Plausibly Alleged Claims for Invasion of Privacy.**

Defendant Capito's argument for dismissing Plaintiffs' two invasion of privacy claims can be reduced to the following syllogism: First, Patriot Front, and

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 15

therefore its members, have viewpoints Mr. Capito and his allies regard as odious and unacceptable; Second, persons and organizations that have viewpoints Mr. Capito and his allies regard as odious and unacceptable should expect to be doxxed by persons such as Mr. Capito and his allies; Third, therefore, Plaintiffs had no reasonable expectation of privacy in their personal and identifying information, even though Mr. Capito obtained it unlawfully and deceitfully and was instructed to keep it confidential.

There are obviously major flaws in this syllogism. First, Mr. Capito's inflammatory and hostile characterizations of Patriot Front and Plaintiffs contradict Plaintiffs' allegations. As noted above, it is a misuse of judicial notice to allow a defendant to create a defense to a plaintiff's allegations, which must be taken as true, by invoking judicial notice doctrine.

Second, Mr. Capito's argument contradicts a long tradition of Supreme Court and other federal cases that upholds the First Amendment rights of groups of persons holding controversial views to protect the confidentiality and even anonymity of the members' identifying information. A related line of First Amendment cases recognizes that the use of fraud or illegal means to obtain information is not sanctioned by the First Amendment.

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 16

### i.    Plaintiffs' Established Right to Privacy under the First Amendment.

The Supreme Court and lower federal courts have been solicitous to protect the privacy of membership information for unpopular organizations, because they have recognized the profound effect public disclosure of such information has on the fundamental right to freedom of association. The Supreme Court's decision in *NAACP v. Patterson*, 357 U.S. 449 (1957), in which the court refused to permit the compelled disclosure of the membership lists of the NAACP, is a seminal case. There, the court stated:

> This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. . . . Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is of the same order. Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.

357 U.S. at 462.

The Supreme Court's stalwart defense of the rights to privacy and freedom of association of supporters of dissident beliefs has continued in subsequent cases, both in the Supreme Court and in the lower federal courts. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 69 (2006) ("[F]reedom of expressive association protects more than just a group's membership decisions. For example, we have held laws unconstitutional that require disclosure of membership lists for groups

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 17

seeking anonymity, or impose penalties or withhold benefits based on membership in a disfavored group") (citations omitted); *Brown v. Socialist Workers' 74 Campaign Comm.*, 459 U.S. 87, 95-101 (1982); *Black Panther Party v. Smith*, 661 F.2d 1243, 1265, 1268 (D.C. Cir. 1981), *vacated on mootness grounds*, 458 U.S. 1118 (1982) ("Privacy is particularly important where the group's cause is unpopular; once the participants lose their anonymity, intimidation and suppression may follow."); *International Action Center v. U.S.*, 207 F.R.D. 1, 3 (D.D.C. 2002) (First Amendment speech and association rights of political action groups precluded government from obtaining through discovery names and addresses of persons who attended protests during presidential inauguration parade); *Sexual Minorities of Uganda v. Lively*, 2015 WL 4750931 at * 3 (D. Mass. Aug. 10, 2015) (applying principles from *NAACP v. Patterson* to discovery dispute).

The Supreme Court recently reaffirmed these principles in *Americans for Prosperity Foundation, v. Bonta,* 141 S.Ct. 2373 (2021), when it struck down as violating the First Amendment a California law that required disclosure of the identities of donors to charitable entities. The Court summarized:

> The First Amendment prohibits government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." This Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
- Page 18

Protected association furthers "a wide variety of political, social, economic, educational, religious, and cultural ends," and "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Ibid.*

We have also noted that "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). *NAACP v. Alabama* involved this chilling effect in its starkest form. The NAACP opened an Alabama office that supported racial integration in higher education and public transportation. *Id.*, at 452, 78 S.Ct. 1163. In response, NAACP members were threatened with economic reprisals and violence. Id., at 462, 78 S.Ct. 1163. As part of an effort to oust the organization from the State, the Alabama Attorney General sought the group's membership lists. Id., at 452–453, 78 S.Ct. 1163. We held that the First Amendment prohibited such compelled disclosure. Id., at 466, 78 S.Ct. 1163. We explained that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association," *id.*, at 460, 78 S.Ct. 1163, and we noted "the vital relationship between freedom to associate and privacy in one's associations," *id.*, at 462, 78 S.Ct. 1163. . . .

A related constitutional principle also fatally undermines Mr. Capito's arguments, namely that the First Amendment does not protect or sanction obtaining information tortiously or unlawfully. The case of *Council on American-Islamic Relations Network v. Gaubatz,* 793 F. Supp. 2d 311 (D.D.C. 2011) illustrates this principle, and the facts in *Gaubatz* resemble those of the instant case in many important respects.

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
12(b)(6) MOTION TO DISMISS
- Page 19

In *Gaubatz*, a National Muslim advocacy organization brought an action against a former intern with the organization and his father, among others, for conversion, breach of fiduciary duty, trespass, and violations of the Stored Communications Act, alleging that, as consequence of the intern's use of a false identity and other false representations and material omissions, the defendants unlawfully obtained access to the organization's facilities and documents and subsequently publicly disclosed and published many of those documents. The intern and other defendants, invoking the First Amendment, moved to dismiss the National Muslim advocacy organization's claims, but the court rejected defendants' First Amendment argument and denied their motion to dismiss. *Id*. at 331-32.

In rejecting the defendant's First Amendment arguments, the *Gaubatz* court stated:

> The First Amendment embodies our national commitment to the free exchange of ideas, but its protections are not boundless. *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). The heart of the Gaubatz Defendants' defense to this action is their contention that the First Amendment either protects their conduct or bars Plaintiffs from obtaining any relief. It is not always easy to reconcile the freedoms afforded by the First Amendment with the protections afforded to individuals by various statutes and the common law, but this much is clear: the protections afforded by the First Amendment, far reaching as they may be, do not place the unlawful acquisition of information beyond the reach of judicial review. Because that is precisely what is at issue in this action, the First Amendment does not require dismissal of Plaintiffs' claims against the Gaubatz Defendants at this time.

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
- Page 20

793 F. Supp. 2d at 330-31.

As these cases make clear, Plaintiffs' right to the confidentiality of their personal information was protected under the First Amendment. Mr. Capito, far from advancing his own First Amendment rights, was violating those of Plaintiffs through his unlawful and unauthorized actions.

### ii.    Plaintiffs' Established Right to Privacy in Washington.

Washington's Constitution expressly confers a right to privacy. Article I, Section 7, states: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." At the heart of Plaintiffs' allegations is that Defendant Capito engaged in unauthorized and unlawful conduct in his obtaining and publicizing of Plaintiffs' confidential and sensitive information. *Compl.* at ¶¶ 20-36. Mr. Capito's conduct implicates and is consistent with Washington's prohibitions on such criminal activity. *See* RCW 9A.46.020 (harassment); RCW 9A.52.070, .080 (trespass); RCW 9A.60.040, .045 (impersonation); RCW 9.73.030, .080 (wiretapping). This type of conduct is the epitome of disturbing someone in their private affairs without authority of law.

Moreover, Washington now specifically prohibits via statute the unauthorized publication of an individual's personal identifying information in this regard (i.e., doxxing). *See* RCW 4.24.792. In enacting this anti-doxxing law, legislators

recognized that criminal law and civil torts likely already prohibited such doxxing activity, but wanted more specific anti-doxxing legislation to ensure that there were no loopholes. *See* Final Bill Report ESHB 1335, C 381 L 23 (stating that doxxing was not specifically prohibited in Washington, but recognizing that such conduct generally fell under other similar criminal and civil prohibitions: "Depending on the specific circumstances, information disclosed, and additional facts, the underlying conduct could qualify as a criminal offense (for example, harassment or stalking) or an actionable civil tort (for example, invasion of privacy or intentional infliction of emotional distress)."). Mr. Capito's conduct has always been susceptible to invasion of privacy claims and has never been protected under Washington law. His arguments that his conduct is acceptable or that doxxing individuals to cause them harm is somehow a righteous or noble cause are nonsensical.

### iii. Plaintiffs' Invasion of Privacy Claims.

The Washington Supreme Court has recognized the common law right of privacy. *Reid v. Pierce County*, 136 Wash.2d 195, 206, 961 P.2d 333 (1998). Washington courts look to the *Restatement (Second) of Torts* for the "guiding principles" of this cause of action. *Reid*, 136 Wash.2d at 206. Washington recognizes several invasion-of-privacy torts, including two that are noted here: (1) intrusion on private affairs and (2) giving publicity to private facts.

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
- Page 22

### a.     Invasion of Privacy – Intrusion on Private Affairs.

With respect to intrusion on private affairs, the *Restatement (Second) of Torts* section 652B (1977) provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." In *Mark v. KING Broadcasting Co.*, Division One of the Washington Court of Appeals said, "[t]he invasion or intrusion must be of something which the general public would not be free to view." 27 Wash. App. 344, 356, 618 P.2d 512 (1980).

Plaintiffs' Complaint raises a plausible invasion of privacy claim for intrusion on private affairs that rises above the speculative level. The Complaint sufficiently alleges that Mr. Capito intentionally intruded upon the private affairs and personal identifying information of Plaintiffs within their protected organizational membership and association through unlawful, unauthorized, and deceptive or fraudulent means. The Complaint also sufficiently alleges that this information was not available to the general public, and that Mr. Capito disseminated, or assisted in, the private information to the general public. The First Amendment jurisprudence, and Washington's anti-doxxing statute and prior common law history, make clear that the revealing of this confidential and sensitive information to the general public would be highly offensive to those reasonable members of an organization like

1    Patriot Front, who took steps to protect its members' privacy and maintain the

2    confidentiality of its members' identities. At minimum, whether something is highly

3    offensive to a reasonable person in this situation has certainly be pled and would, in

4    any event, be an issue of fact for a jury at a later stage. *See White v. Town of*

5    *Winthrop*, 128 Wn. App. 588, 596, 116 P.3d 1034 (2005) (citations omitted)

6    ("Similarly, in Washington, when reasonableness is a material issue in litigation,

7    whether a party acts reasonably is generally a question of fact, and summary

8    judgment is inappropriate.").

9        Furthermore, Plaintiffs allege that Mr. Capito and his accomplices exploited

10    the information to physically harm, harass, and threaten Plaintiffs at their homes,

11    places of employment, or elsewhere, by trespassing on their property, making

12    harassing telephone calls, slashing automobile tires, placing hostile flyers in

13    Plaintiffs' neighborhoods, and other means. *Compl.* at ¶ 31. This is certainly

14    sufficient to plausibly establish a claim for invasion of privacy by intrusion on

15    private affairs.

16        Mr. Capito's argument ignores all of this and essentially argues that Plaintiffs

17    had no reasonable expectation of privacy in their personal and identifying

18    information because, according to Mr. Capito, Plaintiffs espouse hateful views and

19    therefore should expect to be doxxed and harassed by people such as Mr. Capito.

20    This assertion directly contradicts the many Supreme Court and other cases cited

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE

21    12(b)(6) MOTION TO DISMISS

- Page 24

1    above in this memorandum, which uphold on First Amendment grounds the privacy

2    and confidentiality of identifying information of members of controversial

3    organizations. Plaintiffs had a reasonable expectation of privacy in their personal

4    identifying information because the Supreme Court and other courts have repeatedly

5    said they have such privacy. The Courts have made no exception for organizations

6    or viewpoints Mr. Capito does not like.

7                 **b.    Invasion of Privacy – Giving Publicity to Private Facts.**

8          With respect to invasion of privacy for publication of private facts, this tort

9    occurs when the matter publicized is of a kind that (1) would be highly offensive to

10   a reasonable person and (2) is not of legitimate concern to the public. *See*

11   Restatement (Second) of Torts § 652D; *Reid v. Pierce Cty.*, 136 Wash.2d 195, 205,

12   961 P.2d 333 (1998). To state a claim for the tort, it does not suffice to show merely

13   that the defendant disseminated the information. Rather, the defendant must

14   "publicize" the information. "Publicity" means "the matter is made public, by

15   communicating it to the public at large, or to so many persons that the matter must

16   be regarded as substantially certain to become one of public knowledge."

17   Restatement (Second) of Torts § 652D (1977), comment a.

18         Plaintiffs' Complaint likewise raises a plausible invasion of privacy claim for

19   publication of private facts that rises above the speculative level. The Complaint

20   sufficiently alleges that Mr. Capito publicized, and/or assisted in the publication of,

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE

21   12(b)(6) MOTION TO DISMISS
     - Page 25

1   information by making Plaintiffs' confidential and anonymous membership

2   identities public and communicating them to the public at large. As stated above,

3   this would be offensive to a reasonable person in Plaintiffs' position, and there is no

4   basis to suggest that Plaintiffs' information was of any legitimate concern to the

5   public – First Amendment and Washington jurisprudence holding to the contrary.

6       Furthermore, in Washington, the right to privacy acknowledges that the

7   reason a person wishes to keep his or her illness confidential is to avoid the pity that

8   knowledge of such a disease would engender in others. *See Cowles Publ'g Co. v.*

9   *State Patrol*, 109 Wash.2d 712, 721, 748 P.2d 597 (1988) (quoting Restatement,

10  §652D cmt. b, at 386), *quoted in Reid*, 136 Wn.2d at 210. This reasoning is no

11  different than Plaintiffs' right of privacy in keeping their identities and membership

12  in an organization anonymous or confidential to avoid threats and harassment for

13  their unpopular viewpoints.

14      **F.    Plaintiff Brown Has Plausibly Alleged a Claim for Common Law**
        **Fraud.**

15

16      Plaintiff Brown alleged the following for his fraud claim against Defendant

    Capito:

17

18          63. Plaintiff realleges and incorporates the allegations set forth
            in Paragraphs 1 through 36.

19          64. Capito represented to Brown, among other representations,
            that Capito's name was Vincent Washington, that he was

20          sympathetic to Patriot Front's mission and values, and that he

    PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE

21  12(b)(6) MOTION TO DISMISS
    - Page 26

would keep confidential all information he learned as a Patriot Front member or potential member.

65.  These representations were false.

66.  Capito made these representations knowing they were false.

67.  Capito intended that Brown and others affiliated with Patriot Front rely on these false representations.

68. Brown did in fact rely on the representations.

69.  Brown's reliance was reasonable. Capito had carefully created his false identity and concealed his actual identity.

70.  Brown was injured by the misrepresentations, in that he was thereby deceived into allowing Capito into the Patriot Front as a member, from which position Capito was able to uncover sensitive confidential information that he used to doxx Brown and others.

71.  Moreover, Capito used the confidential material he obtained by these fraudulent means to harass Brown at his home and workplace.

72. As a result of Capito's misrepresentations, Brown was forced to relocate and thus lost substantial income.

73. Capito's fraud was malicious.

These allegations fully state a fraud claim under Washington law. In contending otherwise, Mr. Capito invokes *Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986). The *Schreiber* case states in relevant part:

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
- Page 27

1
2
3
4

Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." We have held that Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." ) . . . We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.

5
6
7
8
9
10
11
12
13
14
15
16

It is laughable to contend, as Mr. Capito does, that Mr. Brown's allegations are so lacking in particularity that Mr. Capito cannot prepare an adequate answer. Mr. Brown's allegations fully identify the "who" – the parties – i.e., Mr. Brown and Mr. Capito;  the "what" – the misrepresentations set forth in ¶ 64 and elsewhere;  the "where" – *see* ¶ 8 (alleging that Mr. Brown "was an electrician's assistant in Washington state earning approximately $50,000 a year. He lost that job as a result of Capito's actions."); the "when "– see ¶¶ 20-32 (describing the July 2021 to January 2022 time frame for Mr. Capito's harmful actions); and the "how," i.e., Mr. Capito's deceit and harassment and the harm it caused to Plaintiffs, set forth in ¶¶ 20-36. In summary, Mr. Capito's attacks on Mr. Brown's fraud claim are baseless. Mr. Capito must answer for his fraudulent actions.

## V.    CONCLUSION

17
18
19

Based on the foregoing, Plaintiffs respectfully request that Defendant's Rule 12(b)(6) Motion to Dismiss be denied.

20
21

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
- Page 28

1    I certify this memorandum contains 6,310 words in compliance with LCR

2  7(e)(3) for a response to a motion to dismiss.

3    DATED this 18th day of July 2025.

4

5    HOGUE LAW FIRM

6    /s/ *Christopher M. Hogue*
     Christopher M. Hogue
7    WSBA #48041
     Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21  PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE
    12(b)(6) MOTION TO DISMISS
     - Page 29

**CM/ECF CERTIFICATE OF SERVICE**

I certify that on the date indicated below I caused an electronic copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF system which will then send notification of such filing to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED this 18th day of July 2025.

s/ *Christopher M. Hogue*
Attorney for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
- Page 30