1

HONORABLE RICHARD A. JONES

2

3

4

UNITED STATES DISTRICT COURT

5

WESTERN DISTRICT OF WASHINGTON

6 | PAUL GANCARZ, an individual; )    CASE NO. 3:23-cv-01113-RAJ
DANIEL TURETCHI, an individual; )

7 | COLTON BROWN, an individual; )    DEFENDANT'S REPLY BRIEF IN
JAMES JOHNSON and AMELIA )    SUPPORT OF MOTION TO DISMISS

8 | JOHNSON, individually and husband )    FOR FAILURE TO STATE A CLAIM
and wife, )

9 |                   )

Plaintiffs, )

10 |                   )

v. )

11 |                   )

DAVID ALAN CAPITO II, aka )

12 | VYACHESLAV ARKANGELSKIY, )
aka RYAN SMITH, an individual, )

13 |                   )

Defendant. )

14 | _____ )

15       COMES NOW Defendant to submit this reply in support of his 12(b)(6) motion to

16 dismiss Plaintiffs' complaint. Defendants incorporate by reference their reply in support of their

17 special motion under UPEPA, also filed today.

18 **I.    INTRODUCTION**

19       Plaintiffs' response to Defendant's motion to dismiss does not cure the fatal deficiencies

20 in their claims. Plaintiffs' allegations, even if taken as true, do not give rise to a cognizable legal

21 claim. Plaintiffs -- members of Patriot Front, an organization that, by its own admission,

22 espouses white nationalist ideology -- seek to use federal and state computer crime statutes and

23 common law torts, to punish Mr. Capito for truthfully exposing their activities. Their claims

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 1

24

CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St Ste 301 # 359
Eugene, OR 97401  (541) 687-9180

stretch statutory text, misconstrue applicable precedent, and seek to chill constitutionally

protected speech and public interest transparency. Plaintiffs' asserted harms arise not from any

unlawful conduct by Defendant, but from the predictable consequences of their own actions

coming to light. Plaintiffs' complaint fails to state a claim and must be dismissed in its entirety.

## II.    PLAINTIFFS MISCHARACTERIZE THE CFAA, RELYING ON NON-BINDING AUTHORITY

Plaintiffs' claim under the CFAA is the only cause of action over which this Court has

original jurisdiction.

Plaintiffs' allegations fall solely under section (c)(4)(A)(i)(I) of the CFAA. *See* 18

U.S.C. § 1030(c). Recoverable losses under that provision are limited to economic damages. 18

U.S.C. § 1030(g). Emotional distress is not actionable under the CFAA. *See Creative*

*Computing, LLC*, 386 F.3d at 935. So the "mental distress" and other emotional injuries alleged

in the complaint are clearly non-compensable under the CFAA. Dkt 1 ¶¶ 32-36, 40.

As explained in Defendant's motion to dismiss, the Ninth Circuit has *further* limited the

scope of recoverable losses under the CFAA to technical-related economic damages. *Id.* at 934-

35 (CFAA does not permit recovery for lost revenue or other consequential damages, unless tied

to actual interruption of service); *United States v. Middleton*, 231 F.3d 1207, 1213 (9th Cir.

2000) ("loss" under CFAA refers to remedial costs for investigating and restoring computer

systems). Therefore, to the extent the complaint can be interpreted to allege economic injuries –

*e.g.* for job loss, loss of housing, or harm to reputation, those too are non-compensable. Dkt 1 ¶¶

32-36. Plaintiffs have alleged no technical-related economic damages.

Plaintiffs cite *EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577 (1st Cir. 2001),

which is neither binding nor persuasive in light of controlling Ninth Circuit precedent cited by

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 2

1   Defendant, nor can it act as a substitute for the CFAA's statutory language regarding loss.

2       Plaintiffs rely in part on *United Fed'n of Churches LLC v. Johnson*, 598 F. Supp. 3d

3   1084 (W.D. Wash. 2022) (UFC). First, a district court decision is not binding. *People v. Yang*,

4   800 F.2d 945, 948 (9th Cir. 1986). But even if it was, that case is not on point. While holding

5   that loss of business opportunity and damage to reputation are not compensable under the

6   CFAA, this Court did allow a claim for alleged loss of members and revenue – but those

7   stemmed from an actual interruption of *service*, where theft of the organization's social media

8   accounts impaired its ability to accept donations and retain its membership. 598 F. Supp. 3d at

9   1097-98. Here, even if Patriot Front were a named party, the complaint does not allege any loss

10  in the number of its members or any interruption in its ability to collect revenue or donations.

11      Plaintiffs' complaint does not allege any "interruption of service" causing them

12  cognizable "loss" under the CFAA, nor that the proper function of their computer network

13  includes a personal right to preservation of their personal information. Plaintiffs cannot set forth

14  a plausible claim that makes the leap from the statutory language (as interpreted by the Ninth

15  Circuit) to the facts at issue.

16      To allow a CFAA claim for the individual Plaintiffs' harms would impose liability for

17  the natural consequences of public scrutiny faced by individuals who openly associate with a

18  controversial white nationalist organization, which falls well outside the scope of the damages

19  covered by the CFAA. As further discussed *infra* at 5-9, common-law principles of proximate

20  cause render Plaintiffs' causation allegations implausible and insufficient to state a claim for

21  relief.

22      Plaintiffs fail to allege a cognizable injury under the CFAA, and that claim must be

23  dismissed.

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 3

24

**III.    This Court Should Deny Supplemental Jurisdiction over the State Law Claims If It Dismisses Plaintiffs' CFAA Claim**

In their response, Plaintiffs failed to address supplemental jurisdiction. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

If the CFAA claim is dismissed, Defendant should not be forced to litigate a sprawling set of state law claims in federal court merely because Plaintiffs bootstrapped them to a deficient federal claim. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).

If the Court dismisses Plaintiffs' CFAA claim, it should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss those claims.[1]

**IV.    Plaintiffs Fail to Adequately Allege Causation to Support a Claim Under Va. Code Ann. § 18.2-152.12**

To state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action." It must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Where

---

[1] Late this week Defendant's counsel identified an additional procedural flaw with the Washington claims – they were not served within the time limit set by Washington law – and Defendants will be filing a separate motion to dismiss early next week on statute of limitations grounds. Wash. Rev. Code Ann. § 4.16.170; *Whidbee v. Pierce Cnty.*, 857 F.3d 1019 (9th Cir. 2017); *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075 (9th Cir. 1999).

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 4

1   a complaint merely pleads facts "consistent with" a defendant's liability, it "stops short of the

2   line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct.

3   1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Courts are not "required to accept as

4   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

5   inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Plausibly"

6   does not mean "probably," but "it asks for more than a sheer possibility that a defendant has

7   acted unlawfully." *Iqbal*, 556 U.S. at 678.

8         Here, Plaintiff Gancarz alleges that Defendant's alleged disclosure of his identity, along

9   with publication associating him with unnamed alleged co-conspirators, set off a chain of

10   harassment that ultimately led to termination from his job. Even as alleged, Plaintiff admits that

11   his employer, a separate and independent third party, did not initially act on the disclosure, or on

12   the initial alleged harassment from other parties. Rather, Plaintiff contends that only after an

13   undetermined ongoing harassment by others did his employer later decide to terminate him. Dkt

14   1 ¶ 32. This alleged causal chain is far too attenuated to plausibly connect Defendant's alleged

15   conduct to Plaintiff's termination.

16         Virginia law makes clear that proximate cause requires that an act produce a result "in

17   natural and continuous sequence unbroken by a superseding cause." *Brown v. Commonwealth*,

18   278 Va. 523, 529 (2009). *See also Hawkins v. Commonwealth*, 64 Va. App. 650, 655 (2015).

19   While an act may be a proximate cause even though operating through a series of events, that

20   chain must remain continuous and foreseeable. *Jefferson Hosp., Inc. v. Van Lear*, 186 Va. 74,

21   81 (1947). If an intervening cause is not reasonably foreseeable to the alleged wrongdoer, that

22   cause breaks the causal chain, severing liability. *Id.*; *Goddard v. Protective Life Corp.*, 82 F.

23   Supp. 2d 545, 554 (E.D. Va. 2000).

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 5

24

1    Nothing pled here creates a clear, proximate causal connection between Defendant's

2    alleged disclosure and Plaintiff Gancarz's eventual termination. The alleged harm -- the

3    decision by Plaintiff's employer to fire him -- is the product of an independent third party's

4    discretionary act, which constitutes a superseding, intervening cause. After allegedly exposing

5    Mr. Gancarz's association with a white nationalist organization, Defendant had no control over

6    what Plaintiff's employer or any other third parties might do with that information. Indeed,

7    Plaintiff's employer might have been shared Gancarz's political views and happy to get the

8    news. Nor are sufficient facts pled to show what the employer's reason behind firing the

9    Plaintiff was. The loss of employment under these circumstances is far removed from any

10   reasonably foreseeable consequence of the alleged conduct.

11   Accordingly, Plaintiff Gancarz has failed to allege facts plausibly showing that his

12   damages flow directly from Defendant's conduct, as required by law. His claim under Va. Code

13   Ann. § 18.2-152.12 therefore fails as a matter of law.

14   **V.      Plaintiff Fails to State a Claim Under Md. Code, Crim. Law § 7-302(g)(1)**

15       **A.      Plaintiff's claim under Md. Code, Crim. Law § 7-302(g)(1) fails because the
16   statute was not in effect at the time of the alleged conduct and is not retroactive**

17   The law cited by Plaintiff Turetchi in Count V does not apply because it was not in

18   effect at the time of the alleged tortious conduct and expressly may not be applied retroactively.

19   The complaint alleges that "Capito's access was unauthorized, in that Capito used a false and

20   fraudulent identity to gain access to the Patriot Front and its computer and computer databases .

21   . . and used his access to collect and transmit confidential information." Dkt 1 ¶ 61. Plaintiffs

22   further allege that "in late July 2021, Capito joined Patriot Front with the goal of infiltrating the

23   group and causing harm to its members" by using a false name and identity. *Id.* ¶ 20. Thus, by

24   DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 6

1    Plaintiffs' own allegations, the earliest possible date for any purportedly culpable conduct is late

2    July 2021.

3        However, the civil cause of action on which Plaintiff relies did not exist until October 1,

4    2021, when Maryland House Bill 425 took effect, adding subsection (g) to *Md. Code, Crim.*

5    *Law* § 7-302. *See 2021 Md. Laws ch. 145* (H.B. 425) (effective Oct. 1, 2021).

6    https://mgaleg.maryland.gov/2021RS/Chapters_noln/CH_145_hb0425e.pdf (last visited July 25,

7    2025). The Maryland General Assembly expressly provided that the Act "shall be construed to

8    apply only prospectively and may not be applied or interpreted to have any effect on or

9    application to any cause of action arising before the effective date of this Act." *Id.*

10        The Maryland Constitution likewise forbids retroactive application of criminal statutes:

11    "That retrospective Laws, punishing acts committed before the existence of such Laws, and by

12    them only declared criminal are oppressive, unjust and incompatible with liberty; wherefore, ***no***

13    ***ex post facto Law ought to be made***." *Md. Const. Decl. of Rights*, Art. 17 (emph. added).

14    Although Plaintiff Turetchi's claim is civil in form, it arises from a criminal statute, and the

15    General Assembly's prospective-only clause confirms that no retroactive application is

16    permitted.

17        Because the earliest alleged conduct predates the statute's effective date and the statute

18    is not retroactive, Plaintiff's claim under § 7-302(g) must fail as a matter of law.

19    **B.    Plaintiff fails to state a claim under Md. Code, because he does not plausibly
         allege proximate causation of damages**

20

21        Even if this court rules that the Maryland statute applies to the allegations in the

22    complaint, Plaintiff Turetchi's claim under Maryland's computer offenses statute fails for the

23    same reasons outlined in Section IV, *supra*. Plaintiffs again attempt to stretch a chain of

24    DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 7

1    causation through conclusory statements that do not plausibly connect Defendant's alleged

2    conduct to their claimed injuries.

3        The only portion of § 7-302 that addresses recoverable losses is the statute's definition

4    of "aggregate amount," which limits civil recovery to "a *direct* loss of property or services

5    incurred by a victim" or "actual reasonable *expenditure[s]*" to verify whether a computer

6    system was altered, damaged, or otherwise compromised. Md. Code, Crim. Law § 7-302(a)(3)

7    (emph. added). Plaintiff Turetchi does not allege any such losses. Instead, he seeks damages for

8    reputational harm, emotional distress, and lost employment opportunities, none of which fall

9    within the statute's carefully defined scope.

10        Even if the alleged access and publication of names could be tied to Turetchi's claimed

11    damages, Maryland, like Virginia, recognizes that proximate cause is broken where independent

12    acts by third parties intervene. *Pittway Corp. v. Collins*, 409 Md. 218, 246-48 (2009). An

13    intervening force as one "which actively operates in producing harm to another after the actor's

14    negligent act or omission has been committed." *Handy v. Box Hill Surgery Ctr. LLC*, 255 Md.

15    App. 183, 194 (2022) (citing Section 441 of the Restatement (Second) of Torts). Liability does

16    not attach where the intervening act is a new and independent cause. *Pittway*, 409 Md. at 247-

17    48.

18        Here, once the alleged access and disclosure occurred, a series of independent decisions

19    by unnamed third parties, most notably Plaintiff Turetchi's employer, intervened. Plaintiff

20    admits that his employer initially did not terminate him upon learning of their affiliations, but

21    later changed its decision. Dkt 1 ¶ 33. Plaintiff Turechi also attempts to attribute to Defendant

22    his subsequent failures to secure employment with other brokers. These independent,

23    discretionary employment decisions constitute intervening forces under Maryland law that

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 8

24

1   break any causal chain between Defendant's alleged conduct and Plaintiff's asserted damages.

2       Plaintiff Turechi's claim fails, even if the Maryland statute is deemed to apply

3   retroactively.

4   **VI.    Plaintiffs' Fails to State a Claim for Washington Privacy Tort**

5       **A.    Plaintiffs misapply associational privacy jurisprudence to private parties**

6       As discussed *supra*, Plaintiffs' asserted harms arise not from any unlawful conduct by

7   Defendant, but from the predictable consequences of their own voluntary actions coming to

8   light. Neither the state or federal constitutions, nor the statutes Plaintiffs invoke, shield people

9   from public accountability, nor do they create causes of action for those whose reputations

10  suffer upon non-defamatory exposure of their activities.

11      In constructing their narrative, Plaintiffs fail to comprehend basic premises of our

12  constitutional framework. The First Amendment of the United States Constitution protects

13  people from *government* actions that infringe upon their rights to free speech, religion,

14  assembly, and petition. It does not extend its protections to actions taken by *private* citizens or

15  entities unless those actions are attributable to the government. *See Ams. for Prosperity Found.*

16  *v. Bonta,* 594 U.S. 595, 605 (2021); *Manhattan Cmty. Access Corp. v. Halleck,* 587 U.S. 802,

17  808 (2019).

18      In citing *NAACP v. Alabama ex rel.,* 357 U.S. 449 (1958), Plaintiffs neglected to include

19  the full unabridged version of their quote from that case. Dkt 25 at 17. That case concerned

20  compelled disclosure by a state attorney general, implicating government action. *Id,* at 451. The

21  Supreme Court stated:

22      This Court has recognized the vital relationship between freedom to associate and
        privacy in one's associations. When referring to the ***varied forms of governmental***
23      ***action which might interfere with freedom of assembly***, it said in *American*

24  DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 9

> *Communications Ass'n v. Douds*: "A requirement that adherents of particular religious
> faiths or political parties wear identifying arm-bands, for example, is obviously of this
> nature." Compelled disclosure of membership in an organization engaged in advocacy of
> particular beliefs is of the same order. Inviolability of privacy in group association may
> in many circumstances be indispensable to preservation of freedom of association,
> particularly where a group espouses dissident beliefs.

*Id*. at 462 (emph. added).

Similarly, all the First Amendment authorities Plaintiffs cite at pages 17-18 of their response to the Motion to Dismiss involve governmental action. *See Black Panther Party v. Smith*, 661 F.2d 1243, 1247-48 (D.C. Cir. 1981) (political organization sued federal officials for constitutional violations); *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 600-03 (2021) (charitable organizations sued California's Attorney General for compelled disclosure of donor lists); *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 51-52 (2006) (association of law schools challenged federal Solomon Amendment on First Amendment grounds); *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 2-3 (D.D.C. 2002) (political organizations sought to preclude government inquiries into associational activities during Presidential inauguration protest). Each of these cases involved state or federal actors, unlike the purely private conduct alleged here.

Plaintiffs' reliance on *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237 (D.D.C. 2014), likewise fails. Dkt 25 at 19-20. Even if that case were binding, Plaintiffs are incorrect in portraying that case as factually similar to the present matter. That case involved alleged wiretap violations, a signed nondisclosure agreement, and a *named* conspirator, nothing like the allegations in this case. *Id*. at 242-44. In contrast, Plaintiffs allege that Capito's so-called conspirators include anyone who "allied" with him or agreed with his conduct, such as an organization called DDOS -- none of whom are named in this action.

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 10

Dkt 1 ¶ 4.

Plaintiffs also cite Washington's constitutional provision regarding privacy (resp. to motion to dismiss at 21) but again, that provision protects people from government action, and provides no private cause of action against private parties.

Plaintiffs' theory of First Amendment protection from Defendant and his "allies" is nothing more than a futile attempt to stretch constitutional doctrine beyond recognition, cloaking their grievances in the rhetoric of fundamental rights while ignoring the Amendment's clear limitation to government action.

**B.     Plaintiffs' claims under Washington law fail for lack of proximate causation due to intervening and superseding acts**

At its core, Plaintiffs' theory of liability rests on a highly attenuated chain of causation between Defendant's actions and their alleged injuries. As in Maryland and Virginia, both Washington and the Ninth Circuit have adopted the Restatement of Torts regarding superseding, intervening cause. *United States v. Rothschild Int'l Stevedoring Co.*, 183 F.2d 181, 182 (9th Cir. 1950); *Klein v. Pyrodyne Corp.*, 117 Wash. 2d 1, 17 n. 7, 810 P.2d 917, 925 (1991).

In each instance of alleged harm, whether harassment by third parties, adverse employment decisions, or reactions of family members, there is the specter of both unidentified accomplices and independent actors whose conduct intervened to produce the complained-of outcomes. Most notably, the decisions by Plaintiffs' employers to terminate them were separate and autonomous choices over which Defendant had no control and which were not reasonably foreseeable. *See* Dkt 1 at pages 11-13. Similarly, Plaintiff Brown's father's decision to kick him out of his home is a superseding, intervening cause of the harm Brown suffered as a result of his decision to associate with the Patriot Front. *Id.* ¶ 34.

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 11

Without a plausibly-pled chain of causation, this claim must be dismissed. For example, in *Hemi Group, LLC v. City of New York*, the Supreme Court held that the City had failed to plausibly state a RICO claim that alleged a cigarette vendor had committed fraud by not filing reports listing its purchasers, obstructing the City's efforts to collect taxes from the purchasers. 559 U.S. 1, 5-6, 130 S. Ct. 983 (2010), The Court rejected the claim because the conduct "directly responsible" for the City's injury -- the purchasers' failure to pay taxes -- was "distinct from the conduct giving rise to the fraud" -- the vendor's failure to file the reports. *Id*. at 11. The losses to the City flowed from the "independent actions" of purchasers to withhold the taxes they owed. *Id*. at 15. *See also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458, 126 S. Ct. 1991 (2006).

Similarly, in the instant case, Plaintiffs' losses flowed from the unforeseeable intervening, superseding acts of third parties, and Plaintiffs' Washington state law claims fail to plausibly state a claim for relief.

## C.    Defendant's alleged disclosures do not meet Washington's standard for highly offensive publicity

As stated in Defendant's Motion to Dismiss, Washington courts follow the Restatement (Second) Torts § 652D (1977) for invasion of privacy claims. Under that standard, a person may be liable for publicizing another's private life only if the information shared would be *highly* offensive to a reasonable person *and* is not a matter of legitimate public concern. *See Fisher v. State ex rel. Dep't of Health*, 125 Wash. App. 869, 879 (2005). Examples include *Reid v. Pierce County*, where a former coroner's employee displayed autopsy photographs to his friends. 136 Wash.2d 195, 199-200, 961 P.2d 333 (1998). Another example was disclosure of employee evaluations, addressed in *Dawson v. Daly,* 120 Wash. 2d 782, 797, 845 P.2d 995

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 12

1   (1993). As the *Dawson* court noted, performance evaluations containing an employer's

2   criticisms and observations are not information most individuals willingly disclose to the public.

3   *Id.* Similarly, as Plaintiffs note in their response to Motion to Dismiss at 26, disclosures about

4   illness or disease can be deemed to be highly offensive. *Cowles Publ'g Co. v. State Patrol*, 109

5   Wash.2d 712, 721, 748 P.2d 597 (1988).

6        In contrast, revealing someone's name and what drugs had been prescribed was held not

7   to be a "highly offensive" disclosure in *Fisher v. Dep't of Health*, 125 Wash. App. 869, 879-80,

8   106 P.3d 836, 841 (2005). In *Morgan v. City of Fed. Way*, the Washington Supreme Court held

9   that identifying a judge accused of obnoxious and inappropriate personal behavior was not

10  highly offensive. 166 Wash. 2d 747, 756, 213 P.3d 596 (2009). In *West v. Port of Olympia*, the

11  Washington Court of Appeals held:

12       [W]e have little difficulty holding that disclosure of the Port employee's identity in
         connection with the allegations of failure to follow proper accounting procedures,
13       improper disposal of environmentally sensitive materials, and violation of Port policies
         regarding work on holidays would not be highly offensive to a reasonable person. These
14       allegations merely involve claims that the employee failed to follow proper Port
         procedures or policies, which might be embarrassing but hardly are highly offensive.

15  183 Wash. App. 306, 315, 333 P.3d 488, 492 (2014).

16

17       The disclosures alleged in the complaint fall more into the *West* and *Morgan* categories

18  than *Reid, Dawson,* or *Cowles*. Plaintiffs misapply the relevant standard by conflating what they

19  personally choose not to share with employers or their parents, with what the law recognizes as

20  "highly offensive." The information at issue does not involve intimate or inherently sensitive

21  matters such as medical conditions or family relationships.

22       By their own admission, Patriot Front members proudly engage in activities that are

23  deliberately public-facing, including educational programs where they "take to the public

24  DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 13

1    space," with the stated intention of "put[ting] their ideas to test in the public space." *See Action*,

2    Patriot Front, https://patriotfront.us/action/ (last visited July 25, 2025).[2] Patriot Front promotes

3    these activities in public forums and only attempts to hide its affiliations when those affiliations

4    draw public scrutiny. By choosing to engage in such public activities, Plaintiffs cannot

5    reasonably claim the level of absolute privacy they now demand.

6          Plaintiffs have not stated a claim for relief under Washington tort law.

7    **VIII.    Plaintiffs Fail to State a Claim for Fraud**

8          Plaintiffs do not meaningfully respond to defendants' arguments that their fraud claim

9    was not pled "with particularity," as required in this Circuit. *Schreiber Distributing Co. v. Serv-*

10   *Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The complaint is insufficiently

11   particular on the fraud allegations.

12         For example, in support of Plaintiffs' position that they have adequately pled a cause of

13   action for fraud on behalf of Plaintiff Brown, Plaintiffs point to vague allegations. The crux of

14   Plaintiffs' argument is that "Brown was injured by the misrepresentations, in that he was

15   thereby deceived into allowing Capito into the Patriot Front as a member, from which position

16   Capito was able to uncover sensitive confidential information that he used to doxx Brown and

17   others." Dkt 1, Complaint ¶ 70. The phrase "sensitive confidential information" is so vague as

18   to be meaningless. It fails to inform Mr. Capito of the substance of the allegations against him.

19   *See also* Dkt 1 ¶ 71 (vaguely mentioning "confidential material").

20

21   _____

     [2] As party admissions on their own website, these statements are properly considered in the
22   context of a motion to dismiss. *See, e.g.*, *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 810 F.
     Supp. 2d 1100, 1115 (S.D. Cal. 2011); *Grant House v. Nat'l Collegiate Athletic Ass'n*, 545 F.
23   Supp. 3d 804, 814 n. 4 (N.D. Cal. 2021).

24   DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 14

Beyond the failures of basic language, Plaintiffs also fail to make an ultimate point. *What* about the use of Mr. Capito's alleged fraud to learn about a notorious white supremacist, militant fascist organization is connected to the individual Plaintiffs' damages? *How* did Mr. Capito's exercise of speech result in these losses?

We would be presented with a different situation if Plaintiffs alleged that Defendant had fraudulently induced plaintiffs into *joining* a virulent hate group and as a result their reputations were harmed. But that is not what happened here. Plaintiffs were already committed members of a white supremacist organization without any help from Mr. Capito. Their losses flow from their membership in that group, not from his actions. Plaintiffs use vague allegations to avoid saying the truth, which is that they did this to themselves.

**CONCLUSION**

Defendant respectfully requests that the Court dismiss Plaintiffs' complaint in its entirety for failure to state a claim upon which relief can be granted; or in the alternative, dismiss the sole federal claim, and decline to exercise supplemental jurisdiction over the state law claims, dismissing them pursuant to 28 U.S.C. 1367(c)(3).

Respectfully submitted July 25, 2025,

      /s/ Lauren Regan
Lauren Regan, Lead Counsel, *pro hac vice* pending
CIVIL LIBERTIES DEFENSE CENTER
OSB 970878
1711 Willamette St Ste 301 # 359
Eugene, OR  97401
541-687-9180
lregan@cldc.org

Matthew Kellegrew, local counsel
CIVIL LIBERTIES DEFENSE CENTER

I certify that this memorandum contains 4199 words, in compliance with the Local Civil

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 15

1   Rules.

2                                  /s/ Matthew Kellegrew
                                   Matthew Kellegrew

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEF'S REPLY IN SUPP. OF MTD - 3:23-cv-01113-RAJ - Page 16

24