1                                                                    HONORABLE RICHARD A. JONES

2

3

4

5                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON

6   PAUL GANCARZ, an individual;           )    CASE NO. 2:23-cv-01113-RAJ
    DANIEL TURETCHI, an individual;        )
7   COLTON BROWN, an individual;           )    DEFENDANT'S REPLY IN SUPPORT
    JAMES JOHNSON and AMELIA               )    OF SPECIAL MOTION TO
8   JOHNSON, individually and husband      )    EXPEDITE MOTION TO DISMISS
    and wife,                              )    (UPEPA)
9                                          )
                 Plaintiffs,               )
10                                         )
              v.                           )
11                                         )
    DAVID ALAN CAPITO II, aka              )
12  VYACHESLAV ARKANGELSKIY,               )
    aka RYAN SMITH, an individual,         )
13                                         )
                 Defendant.                )
14  _____       )

15         COMES NOW Defendant to submit this reply in support of his special motion for

16  expedited relief to dismiss Plaintiffs' complaint for failure to state a cause of action upon which

17  relief can be granted, pursuant to RCW 4.105.010-.903, the Uniform Public Expression

18  Protection Act (UPEPA). Defendant incorporates by reference his Motion to Dismiss (Dkt 21)

19  and Reply in Support of 12(b)(6) Motion to Dismiss filed today (Dkt 26).

20

21

22

23

24  DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 1
                                   CIVIL LIBERTIES DEFENSE CENTER
                                      1711 Willamette St Ste 301 # 359
                                      Eugene, OR 97401  (541) 687-9180

**I.    Defendant Has Met His Burden of Demonstrating that Plaintiffs' Causes of Action Are Based upon Defendant's Exercise of Freedom of Speech on a Matter of Public Concern**

    **A.    Defendant has met his burden of demonstrating that Plaintiffs' causes of action are based upon Defendant's exercise of freedom of speech**

Plaintiffs rely on federal case law regarding the scope of the First Amendment of the U.S. Constitution. But UPEPA covers speech protected by the Washington constitution, which provides much broader protections.

RCW 4.105.010(2) provides that "[e]xcept as otherwise provided in subsection (3) of this section, this chapter applies to a cause of action asserted in a civil action against a person based on the person's . . . . (c) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution *or Washington state Constitution*, on a matter of public concern." RCW 4.105.010(2)(c) (emphasis added).

Washington State Constitution provides in Article 1 Section 5: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." As discussed in the Special Motion (Dkt 22) and herein, Defendant is being sued solely for his speech -- for the disclosure of information about a notorious white supremacist organization.

The case law cited by Plaintiffs, arguing that criminal behavior is not protected speech, applies to First Amendment claims, not to the Washington Constitution.

Even if that case law did apply, Plaintiffs are not suing Defendant for criminal behavior Plaintiffs attempt to reframe this civil action as a *de facto* criminal proceeding by repeatedly asserting that Defendant's conduct is akin to criminal trespass, harassment, impersonation, and/or wiretapping under Washington law. These allegations are a frivolous attempt to portray

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 2

1    Defendant's conduct as inherently unlawful in an attempt to strip it of any legitimate public

2    interest. Defendant has not been prosecuted, charged, or convicted of any such crimes, and

3    Plaintiffs' Complaint does not plead facts that would support the elements of those offenses.

4    This is a civil case brought under common law and statutory tort theories, not a criminal

5    prosecution, and Plaintiffs cannot use the civil courts as a substitute for criminal adjudication.

6         Plaintiffs attempt to argue that Defendant's special motion to dismiss under UPEPA fails

7    because, in their view, the actions of Mr. Capito violated Washington criminal law. Indeed,

8    Plaintiffs identify this as the "at the heart" of their claim. Dkt 24, Pltfs' Resp, at 15, line 7.

9    Plaintiffs contend that Mr. Capito's conduct, in their words, "implicates and is consistent with"

10   the crimes of harassment, trespass, impersonation and wiretapping. Plaintiffs both profoundly

11   misunderstand and misapply Washington criminal law. Plaintiffs' attempts to create a rule out

12   of whole cloth absent any legal support by primarily relying on the lay definition of common

13   words like "harassment" (used throughout their complaint), without any regard for their legal

14   definition in this context should fail before this Court.

15        Taken in order:

16   **Harassment**

17   The following are the elements of harassment as defined by RCW 9A.46.020:

18   (1) A person is guilty of harassment if:

19   (a) Without lawful authority, the person knowingly threatens:

20        (i) To cause bodily injury immediately or in the future to the person
          threatened or to any other person; or

21

22        (ii) To cause physical damage to the property of a person other than the
          actor; or

23        (iii) To subject the person threatened or any other person to physical

24   DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 3
          CIVIL LIBERTIES DEFENSE CENTER
          1711 Willamette St Ste 301 # 359
          Eugene, OR 97401  (541) 687-9180

confinement or restraint; or

(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical health or safety; and

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.

Plaintiffs have alleged no facts that support any element of this offense. They have not alleged any specific threats to bodily harm or property by Mr. Capito or any other person. Likewise, they have not alleged that any person was placed in credible fear of the threat coming to pass. Because Plaintiffs have failed to allege any fact that could support any element of the crime of harassment, much less all of them at once, the Court should reject this argument outright.

**Trespass**

Plaintiffs advance two statutes in support of their argument, RCW 9A.52.070 and 9A.52.080. The first, RCW 9A.52.070, is Trespass in the 1st Degree. It prohibits unlawfully entering or remaining in a building. The second, RCW 9A.52.080, is Trespass in the 2nd Degree. Less serious and slightly more broad, trespass in the second degree probits unlawfully entering or remaining on the premises of another.

As with their allegation of harassment, Plaintiffs again fail to allege sufficient facts for the crime of trespass. However, even if they had pled sufficient facts, their argument still fails as a matter of law. Unlike harassment, which does have a speech component, trespass is a crime to property. Its occurrence or nonoccurrence has zero impact on any speech analysis. For example, one can commit the crime of trespass while displaying a political slogan, but the commission of

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 4

1    the trespass does not by some transitive property render the political *speech* a crime. The

2    damages alleged by Plaintiffs flow from Mr. Capito's speech, not a violation of Plaintiffs' right

3    to exclude others from property.

4        **Impersonation**

5        Criminal Impersonation in the 1st Degree is covered by RCW 9A.60.040. A person is

6    guilty of criminal impersonation if they assume a false identity and perform an *act* in their

7    assumed character with the intent to defraud another or for any other unlawful purpose. Here,

8    Plaintiffs have alleged no losses flowing from the commission of such fraudulent *act*.

9    Presumably Plaintiffs would argue that "any unlawful purpose" is broad enough to cover the

10   exercise of Mr. Capito's speech in disclosing Plaintiffs' membership in Patriot Front, however

11   that raises the question of the lawfulness of Mr. Capito's *speech*.

12       Plaintiffs also refer to RCW 9A.60.045, Criminal Impersonation in the 2nd Degree. That

13   certainly sounds like a lessor included offense following Criminal Impersonation in the 1st

14   degree, and that's likely what Plaintiffs thought. But in fact Criminal Impersonation in the 2nd

15   Degree under RCW 9A.60.045 prohibits impersonating a *police officer or a veteran* for

16   fraudulent or unlawful purposes. This offense has no relationship with any fact or issue in this

17   case. It appears it was included because the offense name looked like it might fit their claim and

18   not because it was law that supported their position. This is a running theme throughout

19   Plaintiffs' argument.

20       **Wiretapping**

21       Washington RCW 9.73.030 requires two-party consent to record private conversations.

22   RCW 9.73.080 (presumably what Plaintiffs meant when they cited ".080" for a second time)

23   makes the disclosure of improperly recorded content a misdemeanor. In paragraph 23 of the

24
     DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 5

1   complaint, Plaintiffs allege that Mr. Capito used hidden microphones and cameras to make

2   recordings of "some Patriot Front members." Plaintiffs fail to allege who was recorded, what

3   was obtained in the recording, and most importantly, whether or not those conversations were in

4   private at the time the recording was. Plaintiffs do not even allege that they themselves were

5   recorded and allege claim no damages or injuries as the result of the disclosure of any recorded

6   conversation. Because Plaintiffs have failed to allege sufficient facts to find a violation of RCW

7   9.73.030 or RCW 9.72.080 and, even if sufficient facts were alleged, fail to establish any

8   connection between a violation of this section and their alleged damages, the Court should reject

9   this argument.

10      Finally, Plaintiffs argue that *U.S. v. Osinger*, 753 F.3d 939 (9th Cir. 2014), establishes

11  authority for the position that Mr. Capito cannot raise the UPEPA as a defense because, in their

12  view, his speech was criminal in nature. As discussed above, Plaintiffs have failed to allege the

13  elements of any crime; however, even if a crime were established, *Osinger* has no application in

14  this matter. In *Osinger* defendant challenged the facial constitutional validity of 18 U.S.C. §

15  2261A, the crime of stalking, on the basis that the terms "substantial emotional distress" and

16  "harassment" are overbroad. 753 F.3d 939 at 939. The defendant also challenged the

17  constitutionality of the same law as applied to him in his case. On that point the Court

18  explained:

19      Osinger's as-applied challenge is unpersuasive given the nature of the implicated
        speech. "The First Amendment prohibits any law abridging the freedom of
20      speech. However, the Supreme Court has carved out some limited categories of
        unprotected speech, including obscenity, defamation, fraud, incitement, and
21      speech integral to criminal conduct." *United States v. Meredith*, 685 F.3d 814,
        819 (9th Cir.), cert. denied, —— U.S. ——, 133 S. Ct. 563, 184 L.Ed.2d 366
22      (2012) *sub. nom. Giordano v. United States* (citations, alteration, and internal
        quotation marks omitted). "At issue here is the First Amendment exception that
23      allows the government to regulate speech that is integral to criminal conduct . . . .

24  DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 6

1  . Id. at 819-20.

2  *Osinger,* 753 F.3d 939 at 939 at 946.

3      The Court in *Osinger* addressed a challenge to the *government's* ability to regulate

4  speech identified as criminal in nature. *Osinger* – as with *NAACP* and the other cases discussed

5  in Plaintiffs' response to the Motion to Dismiss (Dkt 24) at 17-18 – has no application to a civil

6  action between non-governmental parties. Plaintiffs have included an excerpt in an attempt to

7  make it appear that *Osinger* creates such a rule. A simple skimming of the text of the case

8  reveals this to be false. Plaintiffs also offer *U.S. v. Gonzalez*, 905 F.3d 165, 193 (3d Cir. 2018),

9  as additional support. Even if that case were binding in this Circuit, it fails as a matter of law for

10 the same deficiency as their reliance on *Osinger*.

11     Plaintiffs also, in passing in the response to the UPEPA motion at 21-22, cite

12 Washington's new doxxing law. But that law did not go into effect until July 2023, and

13 therefore is irrelevant. https://app.leg.wa.gov/Rcw/default.aspx?cite=4.24.792;

14 https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bills/Session%20Laws/House/1335-

15 S.sl.pdf

16     Plaintiffs also allege in passing in their complaint slashing of tires. Dkt 1 ¶¶ 27, 31. If

17 Plaintiffs believed they could prove such behavior by Defendant, they could have alleged

18 trespass to chattels or some other tort related to property damage. They did not. The actual

19 claims are related only to Defendant's speech.

20     In *Aronson v. Dog Eat Dog Films, Inc*., the court struck invasion of privacy and

21 misappropriation claims arising from the inclusion of a plaintiff's image and voice in a

22 documentary about the healthcare crisis, holding that such use was "in furtherance of the

23 exercise of free speech in connection with an issue of public concern" and therefore barred by

24

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 7

CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St Ste 301 # 359
Eugene, OR 97401  (541) 687-9180

the First Amendment and Washington's statutory exemptions. 738 F. Supp. 2d 1104, 1112–14 (W.D. Wash. 2010). The court emphasized that liability for public disclosure of private facts arises only where the publication involves "intimate details of [one's] life" that are "highly offensive" and "not of legitimate concern to the public," which was not the case in *Aronson*. Id. at 1117. As discussed in the Reply on the 12(b)(6) Motion to Dismiss, the disclosed information is not "highly offensive." Dkt 26 at 12-14. Defendant's speech is protected under the Washington Constitution and UPEPA.

The federal doctrine that criminal behavior is not protected by the First Amendment has no relevance to Washington's constitutional right to free speech. More importantly, Defendant is not accused of any crime, and Plaintiff's allegations do not allege elements of any crime.

Defendant has presented sufficient evidence that he is being sued for protected speech.

**B.    Defendant has met his burden of demonstrating that Defendant's speech was on a matter of public concern**

The information disclosed by Defendant was clearly on a matter of public concern. In addressing a SLAPP motion, the Washington Court of Appeals noted:

> Whether speech is a matter of public concern is a question of law, which courts must determine "'by the content, form, and context of a given statement, as revealed by the whole record.'" *Billings v. Town of Steilacoom*, 2 Wash. App. 2d 1, 31, 408 P.3d 1123 (2017) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48, 148 n.7, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community. *Jha [v. Khan,]* 24 Wash. App. 2d [377,] 389, 520 P.3d 470 [(2022)].

*M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wash. App. 2d 51, 72, 566 P.3d 132, 145 (2025). The "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207 (2011) (quoted in *M.G.*, 34 Wash. App. 2d at 73, 566 P.3d at 146). "[S]peech relating to

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 8

1    political, social, or other concern to the community involves matters of public concern. [*Jha*,]

2    24 Wash. App. 2d at 389, 520 P.3d 470. Under the statute, our legislature requires us to broadly

3    construe whether speech is a matter of public concern. *Id*. at 390, 520 P.3d 470; RCW

4    4.105.901." *M.G.*, 34 Wash. App. 2d at 74, 566 P.3d at 146.

5         Thus, in *M.G.,* the Washington Court of Appeals held, as a matter of law, that speech

6    about concerns about sexual assault of young women on Bainbridge Island and a high school's

7    response to reports of such assaults was speech on a matter of public concern. The same is true

8    in the instant case.

9         Patriot Front was formed by participants in the deadly white supremacist 2017 "Unite

10   the Right" rally in Charlottesville, Virginia, in which a member of Patriot Front's predecessor

11   organization drove his car into an anti-racist march, killing one and injuring over a dozen. *See*

12   ADL.org, *Hate on Display/Patriot Front,* https://www.adl.org/resources/hate-symbol/patriot-

13   front.[1] Patriot Front's bigoted demonstrations have gathered media attention from the New York

14   Times, NPR, and other major news outlets. *See* Alan Feuer, *After Jan. 6 Sedition Convictions,*

15   *Far-Right Threats Remain,* NY Times (May 7, 2023),

16   https://www.nytimes.com/2023/05/05/us/politics/jan-6-sedition-proud-boys-far-right.html; *see*

17   *also* All Things Considered, *A Look at the Role Armed Militia Groups May Have Played in the*

18   *Weeks Before Jan. 6*, NPR (June 12, 2022, at 17:10 EST),

19   https://www.npr.org/2022/06/12/1104460671/a-look-at-the-role-armed-militia-groups-may-

20   _____

21   [1] "In ruling on a motion under RCW 4.105.020, the court shall consider the pleadings, the
     motion, any reply or response to the motion, and any evidence that could be considered in ruling

22   on a motion for summary judgment under superior court civil rule 56." RCW 4.105.050. Thus, a
     UPEPA motion is not subject to the FRCP 12(b)(6) rules limiting the Court to review of the

23   pleadings themselves.

24   DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 9

1 | have-played-in-the-weeks-before-jan-.[2]

2 |       Patriot Front's behavior has elevated it to national notoriety, clearly rising to the level of

3 | a matter of public concern. The Southern Poverty Law Center and many others have taken note

4 | and outlined the beliefs and actions of this national organization.

5 | https://www.splcenter.org/resources/extremist-files/patriot-front/

6 | https://www.adl.org/resources/backgrounder/patriot-front

7 | https://idavox.com/index.php/2025/01/28/the-curiosity-dilemma-being-patriot-front-in-2025

8 | Mackenzie Ryan, *A White Nationalist Pyramid Scheme: How Patriot Front Recruits Young*

9 | *Members,* The Guardian (Sep. 2, 2022, at 06:00 EDT), https://www.theguardian.com/us-

10 | news/2022/sep/02/patriot-front-recruits-members-young-pyramid-scheme; Rina Torchinsky, *1*

11 | *in 5 Patriot Front Applicants Say They Have Ties to the Military*, NPR (Feb. 9, 2022, at 18:46

12 | EST), https://www.npr.org/2022/02/09/1079700404/1-in-5-patriot-front-applicants-say-they-

13 | have-ties-to-the-military

14 | Chris Schiano, *et. al.*, *Patriot Front Fascist Leak Exposes Nationwide Racist Campaigns,*

15 | Unicorn Riot (Jan. 21, 2022), https://unicornriot.ninja/2022/patriot-front-fascist-leak-exposes-

16 | nationwide-racist-campaigns/.

17 | *Neo-Nazis Are Trying to Dox the Cops Who Arrested Patriot Front Members*, Vice News, (June

18 | 13, 2022, at 15:52 EST), https://www.vice.com/en/article/4axgzj/neo-nazis-are-trying-to-dox-

19 | the-cops-who-arrested-patriot-front-members.

20 |       As a matter of law, disclosure of information about Patriot Front and its members is a

21 | matter of public concern.

---

[2] All websites were last visited on July 25, 2025.

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 10

CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St Ste 301 # 359
Eugene, OR 97401  (541) 687-9180

## II.    Statutory Exceptions to UPEPA Do Not Apply

As Defendant noted in his UPEPA motion, he acknowledges that UPEPA does not apply to the federal claim or the fraud claim. However, the other exceptions cited by Plaintiffs are inapplicable.

### A.    The UPEPA exemption for claims regarding victims of crime does not apply

Plaintiffs argue (Dkt 24 at 28-19) that UPEPA does not apply to a cause of action against a person named in a civil suit brought by a victim of a crime against a perpetrator. RCW 4.105.010(3)(a)(iv). They further argue that Plaintiffs Gancarz and Turetchi were victims of a computer crime. But Defendant has never been charged with a crime. The fact that the Virginia and Maryland criminal statutes also contain a civil provision does not allow for a leap to rendering Plaintiffs victims of a "crime" that has never been prosecuted.

### B.    The UPEPA exemption for emotional distress arising out of employment situations is not relevant

Plaintiffs argue (Dkt 24 at 19) that UPEPA does not apply "to causes of action involving the infliction of emotional distress. RCW 4.105.010(3)(a)(viii)." First, subsection viii does not mention emotional distress. Presumably, Plaintiffs are attempting to refer to subsection (x). That provision states that UPEPA does not apply to "claims brought under Title 49 RCW; negligent supervision, retention, or infliction of emotional distress unless the claims involve damage to reputation; wrongful discharge in violation of public policy; whistleblowing, including chapters 42.40 and 42.41 RCW; or enforcement of employee rights under civil service, collective bargaining, or handbooks and policies." All of these are employment-related claims. In reviewing the final Senate Report, it is clear that the legislature intended the initial semicolon (after "RCW") to be a colon. *See* Exhibit a at 2-3 (available at

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 11

1  https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bill%20Reports/Senate/5009-

2  S%20SBR%20FBR%2021.pdf?q=20250725170307). In other words, everything after "RCW"

3  was a *list* of types of claims brought under Title 49 RCW (the labor law statutes), not a separate

4  exemption for all claims alleging "emotional distress."

5      Interpreting UPEPA to exempt *all* claims for emotional distress would eviscerate the

6  statute, and does not make any sense, nor does it comport with the reasonable interpretation of

7  the statutory wording.

8  **III.  Plaintiffs Have Not Plausibly Alleged All Necessary Elements of the Challenged
       Claims**

9
       As fully briefed in Defendant's Motion to Dismiss (Dkt 21) and in the reply in support

10  of that motion (Dkt 26), Plaintiffs' complaint fails to state cognizable, plausible, claims for

11  relief.

12  **IV.  Defendant Capito's UPEPA Motion to Dismiss Was Substantially Justified and
13       Was Not Filed Solely with Intent to Delay These Proceedings**

14      Defendant has presented a non-frivolous UPEPA motion, fully briefing well-founded

15  factual and legal arguments that he is being sued for his speech; that that speech was on an issue

16  of public concern; and that Plaintiff's complaint does not state a claim for relief.

17      It is Plaintiffs who have filed unjustified claims. Defendant has simply asserted his right

18  under UPEPA to seek expedited dismissal. No fees or costs should be awarded to Plaintiffs. If

19  the Court dismisses Plaintiffs' claims, Defendant will submit a petition for attorney fees and

20  costs pursuant to UPEPA.

21      Respectfully submitted July 25, 2025,

22          /s/ Lauren Regan
       Lauren Regan, PHV, Lead Counsel
23       CIVIL LIBERTIES DEFENSE CENTER

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 12
24                CIVIL LIBERTIES DEFENSE CENTER
                1711 Willamette St Ste 301 # 359
                Eugene, OR 97401  (541) 687-9180

OSB 970878
1711 Willamette St Ste 301 # 359
Eugene, OR  97401
541-687-9180
lregan@cldc.org

_____/s/ Matthew Kellegrew_____
Matthew Kellegrew, local counsel
CIVIL LIBERTIES DEFENSE CENTER
mkellegrew@cldc.org

I certify that this memorandum contains 3178 words, in compliance with the Local Civil Rules.

_____/s/ Matthew Kellegrew_____
Matthew Kellegrew

DEF'S REPLY -- SPECIAL MO. TO EXPEDITE MTD - 3:23-cv-01113-RAJ - Page 13