HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9   PAUL GANCARZ, an individual;          Case No.  3:23-cv-01113-RAJ
    DANIEL TURETCHI, an
10  individual;COLTON BROWN, an           ORDER
    individual; JAMES JOHNSON and
11  AMELIA JOHNSON, individually
    and husband and wife.,
12
                Plaintiff,
13
          v.
14
    DAVID ALAN CAPITO II, aka
15  VYACHESLAV
    ARKANGELSKIY, an individual,
16
                Defendant.
17

18              I.      INTRODUCTION

19       THIS MATTER comes before the Court on Defendant David Alan Capito II's

20  Motion to Dismiss for Failure to State a Claim, Dkt. # 21, Special Motion for Expedited

21  Relief to Dismiss Pursuant to RCW 4.105.010-.903 (Uniform Public Expression

22  Protection Act), Dkt. # 22, and Motion to Dismiss Washington State Law Claims on

23  Statute of Limitations Grounds, Dkt. # 28.  The Court has reviewed the motions, the

24  submissions in support of and in opposition to the motions, and the balance of the record.

25  Mr. Capito requested oral argument, but the Court finds oral argument is unnecessary.

26

ORDER - 1

For the reasons set forth below, the Court **GRANTS** Mr. Capito's Motion to Dismiss for Failure to State a Claim and **DENIES** the remaining motions as moot.

Plaintiffs belong to or are affiliated with a controversial group called the Patriot Front. They allege that they were fired from their jobs after Mr. Capito gained unauthorized access to Patriot Front's computer server and widely disseminated the information he collected. As a result, Plaintiffs sued Mr. Capito for violation of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and several state law claims. Because the Court finds the loss of Plaintiffs' jobs is not a qualifying "loss" within the meaning of the CFAA, that claim is dismissed, with leave to amend. The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## II.    BACKGROUND

Plaintiffs Paul Gancarz, Daniel Turetchi, Colton Brown, James Johnson, and Amelia Johnson are members of, or affiliated with, an organization called Patriot Front. Dkt. # 1 ¶ 2. In Plaintiffs' words, Patriot Front's mission is to "reforge . . . our people, born to this nation of our European race . . . as a new collective capable of asserting our right to cultural independence." *Id.*

Plaintiffs allege that Mr. Capito "infiltrated Patriot Front using a false identity and later gained unauthorized access to confidential information about the Plaintiffs from Patriot Front's computer databases." *Id.* ¶ 4. Specifically, they allege that in late July 2021, Mr. Capito "joined Patriot Front with the goal of infiltrating the group and causing harm to its members." *Id.* ¶ 20. By using a "false name and identity" and "lying about his background and values," Mr. Capito "convinced Patriot Front to accept him for membership." *Id.* Patriot Front instructed Mr. Capito that "any information he obtained regarding Patriot Front members or potential members was to be kept confidential." *Id.* ¶ 21.

ORDER - 2

1    Once a member, Mr. Capito allegedly began collecting confidential information

2  about Patriot Front and its members.  Mr. Capito "used his access to the Patriot Front

3  server to execute a session hijack attack" and a "simultaneous denial of service attack

4  against Patriot Front's website."  *Id.* ¶ 25.  Through this attack, Mr. Capito gained

5  "unauthorized administrator privileges" to Patriot Front's chat server "to download

6  private chats and intercept video links."  *Id.* ¶ 26.  In addition, Mr. Capito allegedly took

7  photographs of members' "license plates and other personal information" and "used

8  hidden microphones and cameras to record them" during various group meetings.  *Id.* ¶¶

9  22–23.

10    Then, Mr. Capito "and his accomplices arranged to widely publish" the collected

11  information "with the aim and result of harming the Plaintiffs in their vocations and

12  personal lives."  *Id.* ¶ 30.  Mr. Capito and his accomplices also "exploited the information

13  to physically harm, harass, and threaten the Plaintiffs at their homes, places of

14  employment, or elsewhere, by trespassing on their property, making harassing telephone

15  calls, slashing automobile tires, placing hostile flyers in Plaintiffs' neighborhoods, and

16  other means."  *Id.* ¶ 31.  Plaintiffs allege that as a result of Mr. Capito's actions, they

17  suffered harms including loss of employment and mental distress.  *Id.* ¶¶ 32–36, 41.

18    Plaintiffs assert the following causes of action against Mr. Capito:  (1) violation

19  of the CFAA; (2)  invasion of privacy – intrusion on private affairs; (3) invasion of

20  privacy – giving publicity to private facts; (4) violation of the Virginia Computer

21  Trespass Act; (5) violation of the Maryland Unauthorized Access to Computers Act; and

22  (6) fraud – misrepresentation.  *Id.*  ¶¶ 37–73.  Plaintiffs invoke the Court's federal

23  question jurisdiction.  *Id.* ¶ 12.

24

25

26

ORDER - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

### IV.   DISCUSSION

#### A.   CFAA Claim.

The question before the Court is whether Plaintiffs' alleged loss of employment and mental distress support a qualifying "loss" within the meaning of the CFAA.   The Court finds they do not.

The CFAA prohibits, among other things, "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).  The statute gives a private right of action to "[a]ny person who suffers damage or loss by reason of a violation" if the violation meets one of five factors. *Id.* § 1030(g). [1]  Of the five factors, the only one relevant to Mr. Capito's alleged violation is that it caused "loss to 1 or more

---

[1] Plaintiffs concede they did not allege "damage" within the meaning of the CFAA. *See* Dkt. # 25 at 9–10 ("It may be, as Mr. Capito argues, that 'damage' as thus defined requires impairment to the integrity of a computer system.").

ORDER - 4

1    persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* §

2    1030(c)(4)(A)(i)(I).

3         The CFAA defines "loss" as "any reasonable cost to any victim, including the cost

4    of responding to an offense, conducting a damage assessment, and restoring the data,

5    program, system, or information to its condition prior to the offense, and any revenue

6    lost, cost incurred, or other consequential damages incurred because of interruption of

7    service." *Id.* § 1030(e)(11).

8         This definition sets forth "a narrow conception of 'loss.'" *Andrews v. Sirius XM*

9    *Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019).  As the Ninth Circuit explained in

10   *Andrews*, a common principle of statutory construction—"the specific governs the

11   general"—applies here. *Id.* at 1263.  The definition's opening phrase, "any reasonable

12   cost to any victim," must therefore be understood in the context of the more limiting

13   descriptions following it. *Id.*  In addition, "the CFAA is 'an anti-hacking statute,' not 'an

14   expansive misappropriation statute.'" *Id.* (quoting *United States v. Nosal*, 676 F.3d 854,

15   857 (9th Cir. 2012)).  Taken together, the "statute's 'loss' definition—with its references

16   to damage assessments, data restoration, and interruption of service—clearly limits its

17   focus to harms caused by computer intrusions, not general injuries unrelated to the

18   hacking itself." *Id.*

19        Other controlling authority have also applied this narrow interpretation.  In *United*

20   *States v. Middleton*, 231 F.3d 1207 (9th Cir. 2000), the Ninth Circuit found the following

21   jury instruction accurately defined "loss" under the CFAA:  "The term 'loss' means any

22   monetary loss that [plaintiff] sustained as a result of any damage to [plaintiff's] computer

23   data, program, system or information that you find occurred. . . ." *Id.* at 1213. More

24   recently, the Supreme Court reiterated that "loss" under the CFAA "relates to costs

25   caused by harm to computer data, programs, systems, or information services." *Van*

26

ORDER - 5

1    *Buren v. United States*, 593 U.S. 374, 391–92 (2021).  The focus is on "technological

2    harms—such as the corruption of files—of the type authorized users cause to computer

3    systems and data." *Id.*

4         Here, Plaintiffs allege that as a result of Mr. Capito's unauthorized access to the

5    Patriot Front's chat server, and subsequent dissemination of the information he collected,

6    Plaintiffs lost their jobs and suffered mental distress.  Dkt. # 1 ¶¶ 32–36, 41.  The Court

7    easily finds that this falls outside the narrow definition of "loss" under the CFAA.

8    Plaintiffs' alleged harms are not the type of "technological harms" contemplated by the

9    CFAA.  *See Van Buren*, 593 U.S. at 392.  Rather, they are the downstream effects of Mr.

10   Capito's alleged *use* of Patriot Front's information.  But the CFAA is "not an expansive

11   misappropriation statute," *Andrews*, 932 F.3d at 1263, and Plaintiffs' alleged harms are

12   too remote to qualify as a "loss" under the CFAA.

13        Plaintiffs' arguments to the contrary are unpersuasive.  First, Plaintiffs cite *EF*

14   *Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001).  Dkt. # 25 at 10.  In

15   addition to being an out-of-circuit opinion, *EF Cultural Travel* was decided under a prior

16   version of the CFAA that did not define "loss." *Id.* at 584.  It has no applicability to this

17   case.  Second, Plaintiffs argue they incurred "other consequential damages . . . because

18   of interruption of service" within the meaning of the CFAA.  Dkt. # 25 at 11.

19   Specifically, they argue they experienced an "interruption of service" because "Mr.

20   Capito disrupted and interfered with the proper functioning of their computer network,

21   i.e., its preservation of the confidentiality of their valuable personal information." *Id.*

22   This stretches the definition too far.  Plaintiffs do not allege they ever lost the ability to

23   use their server or any other "service," and thus cannot fairly be said to have experienced

24   an "interruption of service."  Even if they did, the alleged harms are again too remote and

25   do not bear a sufficiently direct causal connection to any alleged "interruption of service."

26

ORDER - 6

1    Accordingly, Plaintiffs' CFAA claim is dismissed.  Plaintiffs did not seek leave

2   to amend and it is unclear if any facts exist to support a CFAA "loss."  Nevertheless, "a

3   district court should grant leave to amend even if no request to amend the pleading was

4   made" if "it appears at all possible that the plaintiff can correct the defect."  *Lopez v.*

5   *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494,

6   497 (9th Cir. 1995) and *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir.

7   1988)).  Because Plaintiffs could conceivably allege new facts consistent with their

8   present allegations to support a CFAA "loss," dismissal is with leave to amend.

9          **B.       Supplemental Jurisdiction.**

10          District courts "may decline to exercise supplemental jurisdiction over a claim . . .

11   if . . . the district court has dismissed all claims over which it has original jurisdiction."

12   28 U.S.C. § 1367(c)(3).  The decision to exercise supplemental jurisdiction is a matter of

13   the district court's discretion and informed by the values of "economy, convenience,

14   fairness, and comity."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

15   "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance

16   of factors . . . will point toward declining to exercise jurisdiction over the remaining state-

17   law claims."  *Id.* (quoting *Carnegie-Mellon*, 484 U.S. 343, 350 n. 7 (1988)).

18          The Court, in its discretion, declines to exercise supplemental jurisdiction over

19   Plaintiffs' remaining state law claims.  In addition to the CFAA claim, Plaintiffs assert

20   state law claims for invasion of privacy, fraud, and violations of the Virginia Computer

21   Trespass Act and Maryland Unauthorized Access to Computers Act.  Dkt. # 1 ¶¶ 37–73.

22   At this early stage in litigation, where the Court has not addressed any issues presented

23   by the state law claims, the Court finds it is in the best interest of economy, convenience,

24   fairness, and comity to decline supplemental jurisdiction.  The Court therefore will not

25

26

ORDER - 7

1    reach the remaining arguments in Mr. Capito's motion to dismiss or the other two

2    pending motion, which relate only to Plaintiffs' state law claims.

3                              V.    CONCLUSION

4           For the forgoing reasons, Defendant's Motion to Dismiss for Failure to State a

5    Claim, Dkt. # 21, is **GRANTED** and the Complaint is **DISMISSED WITHOUT**

6    **PREJUDICE** and with leave to amend within 21 days of this order.  Defendants' Special

7    Motion for Expedited Relief, Dkt. # 22, and Motion to Dismiss Washington State Law

8    Claims, Dkt. # 28, are **DENIED** as moot.

9

10          Dated this 16th day of January, 2026.

11

12

13

14                                        The Honorable Richard A. Jones
                                          United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 8